# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SYNTHEON, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. NO. 16-10244-ADB |
| | ) | |
| COVIDIEN AG, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT COVIDIEN AG'S MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

COVIDIEN AG

By its Attorneys,

David J. Apfel (BBO No. 551139)
dapfel@goodwinprocter.com
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Tel: 617.570.1970
Fax: 617.227.8591

Drew M. Wintringham, III
drew.wintringham@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

Matthew D. Satchwell (Illinois Bar No. 6290672)
matthew.satchwell@dlapiper.com
Ferlillia V. Roberson (Illinois Bar No. 6296432)
ferlillia.roberson@dlapiper.com
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
Tel: 312.368.4000
Fax: 312.236.7516

Date:  September 2, 2016

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ...................................................................................................... 1

II.     STATEMENT OF FACTS............................................................................................................ 3

    B.      Requests for Continued Applications................................................................................ 5

    C.       Covidien's Prosecution of Patent Applications Under the Parties' Agreements........................... 5

    D.      Covidien's Prosecution of the '042 Application After the PTO's Initial Rejection...................... 6

    E.      Covidien's Prosecution of the '358 Application after the Notice of Allowance........................... 7

    F.      Syntheon's Motion for Preliminary Injunction .............................................................. 7

III.    ARGUMENT .................................................................................................................................. 9

    A.      Syntheon is Not Likely to Succeed on the Merits.................................................................. 9

    B.      Syntheon Will Not Suffer Irreparable Harm .................................................................... 10

    C.      The Balance of Equities Weights in Covidien's Favor ....................................................... 14

    D.      The Public Interest Weighs Against Issuing a Preliminary Injunction ......................... 15

    E.      Syntheon is Required to Post Bond.................................................................................... 16

IV.     CONCLUSION .............................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*7-Eleven, Inc. v. Grewal*,
  60 F. Supp. 3d 272 (D. Mass. 2014) ........................................................................9

*Abbott Labs. v. Sandoz, Inc.*,
  544 F.3d 1341 (Fed. Cir. 2008)..............................................................................16

*AccuSoft Corp. v. Palo*,
  237 F.3d 31 (1st Cir. 2001).............................................................................10, 16

*Aston Martin Lagonda of N. Am. Inc. v. Lotus Motorsports, Inc.*,
  Civil Action No. 13-11213-DJC, 2013 WL 2467754 (D. Mass. Jun. 6, 2013) ..................9, 11

*Asymmetrx Med., Inc. v. McKeon*,
  932 F. Supp. 2d 232 (D. Mass. 2013) ...............................................................10, 14

*Charlesbank Equity Fund II v. Blinds to Go, Inc.*,
  370 F.3d 151 (1st Cir. 2004)..................................................................................14

*Coady Corp. v. Toyota Motor Dist., Inc.*,
  361 F.3d 50 (1st Cir. 2004)..............................................................................10, 13

*Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*,
  77 F. Supp. 2d 199 (D. Mass. 1999) .......................................................................16

*JL Powell Clothing LLC v. Powell*,
  590 F. App'x 3 (1st Cir. 2014) .........................................................................2, 9, 11

*Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc.*,
  759 F. Supp. 2d 110 (D. Mass. 2010) ....................................................................13

*Verizon New England, Inc. v. Int'l Brotherhood of Electrical Workers, Local*,
  651 F.3d 176 (1st Cir. 2011)............................................................................13, 14

*Voice of the Arab World Inc. v. MDTV Med. News Now Inc.*,
  645 F.3d 26 (1st Cir. 2011)......................................................................................9

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).....................................................................................................9

## OTHER AUTHORITIES

37 CFR 1.114(a)...........................................................................................................5

Fed. R. Civ. P. 65(c) ..................................................................................................16

Defendant Covidien, AG ("Covidien") respectfully submits this memorandum of law in opposition to Plaintiff Syntheon, LLC's ("Syntheon") motion for a preliminary injunction (the "Motion")

## I. PRELIMINARY STATEMENT

Covidien opposes the Motion on three fundamental grounds: (i) Syntheon has not been harmed in the slightest by Covidien's alleged breach of contract, and it will not experience any harm going forward, let alone the requisite "irreparable harm" if the Motion is denied; (ii) Syntheon cannot prove that it is likely to prevail on the merits as the Motion improperly asks this Court to rewrite the parties' contract and impose obligations on Covidien beyond those for which the parties bargained; and (iii) to the extent Covidien technically breached the parties' Asset Purchase Agreement ("APA" or the "Agreement"),[1] Covidien has remedied the breach, and unilaterally offered to take on disclosure obligations going forward beyond those in the APA. Syntheon's Motion, which demands even greater concessions, is overreaching, and would unfairly and inequitably require Covidien to incur expenses and unduly burdensome administrative obligations.

Syntheon specifically alleges that Covidien breached the APA by allegedly failing to provide Syntheon with advance notice of: (i) a July 22, 2015 meeting that Covidien had with the United States Patent Office ("PTO"); (ii) the filing, on August 24, 2015, of a Request for Continued Examination ("RCE") regarding Patent Application No. 14/607,358 (the "'358 Application"); and (iii) the filing, on June 1, 2016, of a RCE regarding Patent Application No. 14/231,042 (the "'042 Application"). But, the APA does not require that Covidien provide

---

[1] Covidien maintains that the patent applications relevant to this Motion are governed by the parties' Development Agreement ("DA") rather than the APA. However, because the DA and APA contain nearly identical provisions pertaining to patent prosecution rights and responsibilities, the analysis for purposes of this Motion is the same under either agreement. As a matter of convenience, therefore, Covidien refers herein to relevant provisions of the APA.

Syntheon with any advance notice of meetings with the PTO.  Thus, the July 2015 meeting was not a breach of the APA.  As for the two alleged RCE notice violations, Covidien provided Syntheon with pre-filing notice of its intent to file the June 1, 2016 RCE, but Syntheon did not request a pre-filing copy of the RCE itself.  Furthermore, there is no evidence, nor could there be any, that Syntheon was in any way harmed by the alleged non-disclosure of either RCE.

Syntheon does not allege or argue, nor could it, that it was harmed by the two RCE non-disclosures.  Likewise, it does not allege or argue that it would actually experience "irreparable harm" if this Court declined to order the requested preliminary injunction.  Instead, Syntheon maintains that irreparable harm should be conclusively presumed based solely on the parties' agreement under the APA that any breach would "constitute sufficient irreparable harm to justify injunctive relief."  *See* Syntheon Mem. at 15.  Syntheon is wrong.  As a matter of law, such contractual injunctive relief provisions, without more, are insufficient to establish the irreparable harm required to succeed on a motion for preliminary injunction.  *See, JL Powell Clothing LLC v. Powell*, 590 F. App'x 3, 5 (1st Cir. 2014) (reversing preliminary injunction grant where "district court based its conclusion *solely* on the existence of a contractual provision 'agree[ing] that irreparable damage would occur' in the event of a breach") (emphasis in original).  Rather, as Syntheon itself admits, "[a] showing of irreparable harm requires 'an actual, viable, presently existing threat of serious harm' that cannot adequately be remedied through money damages." Syntheon Mem. at 15. There is not, and never has been, any such "presently existing threat" in this case as evidenced by the fact that Syntheon waited one year after the alleged notice violations relating to the Examiner interview and '358 Application RCE before filing its Motion. Furthermore, failure to make advance disclosure of RCEs, which merely extend and continue patent examinations, can never irreparably harm Syntheon, as any rights it may want to exercise

would still be available after the RCE is filed.  RCEs preserve, they do not eliminate, patent examination rights.

Notwithstanding the absence of any harm or threat of harm to Syntheon from Covidien's alleged RCE-notice breaches, Covidien recognizes that Syntheon is entitled to advance notice of RCE filings under the parties' Agreement, and recognizes that it failed twice, albeit inadvertently, to give such notice.  It has acknowledged its mistakes to Syntheon, and made clear that the mistakes won't happen again.  Further, Covidien has offered to take on RCE-related obligations beyond anything required under the APA, including: (i) providing Syntheon with copies of RCEs a full 14 days before filing; and (ii) providing Syntheon with all documents it intends to file with any RCE the same 14 days before filing or as long before filing as is practicable under the circumstances.  In other words, Covidien has already agreed in writing to remedy its errors by voluntarily providing Syntheon with the exact remediation it has requested for Covidien's RCE violations.  That offer should have obviated the need for Syntheon to pursue the Motion.  But Syntheon has insisted on moving forward with its Motion, asserting that Covidien's two RCE violations entitle Syntheon to at least 14 days advance receipt and/or notice of any and all filings and contacts Covidien intends to make or have with the PTO, whether related to RCEs or not.  But as Syntheon has acknowledged, the APA does not require any such sweeping disclosure obligations, which would create an expensive, administrative nightmare for Covidien.  And this Court should not accept Syntheon's invitation to rewrite the APA.

## II. STATEMENT OF FACTS[2]

### A. The Parties' Rights and Obligations Under the APA

---

[2] This Statement of Facts is limited to those facts that are pertinent to the Motion.  (*See generally* the Affidavit of Stephen B. Perkins in Support of Covidien's Opposition to Plaintiff's Motion for Preliminary Injunction ("Perkins Aff.") submitted herewith.)  A more comprehensive factual recitation of the background to the parties' disputes is contained in Covidien's Answer to the Amended Complaint.

In December 2008, Covidien and Syntheon entered into the APA whereby Syntheon agreed to sell Covidien certain patent applications and intellectual property related to a cordless ultrasonic dissector.  (Perkins Aff. ¶¶ 4-5.)   In turn, Covidien agreed to pay Syntheon, among other things, royalties on the net sales of any product it would sell that would be covered by any current or future patent on the intellectual property transferred to Covidien under the Agreement.[3]  *See* APA, § 2.6(b).  (A true and accurate copy of the APA is attached as Exhibit A to the Declaration of Sean MacBrayer, Dkt. 29.)

Pursuant to the APA, Covidien is "solely responsible for the continued prosecution and maintenance of any Patent Application included in the Transferred Intellectual Property."  APA § 7.8(a).  Covidien is also "solely" responsible for any "preparation, filing, and maintenance of any new Patent Application."  *Id*.  Moreover, the APA provides that Covidien will prosecute the Transferred Intellection Property "diligently and in good faith" using "the same degree of care that Covidien AG uses in the normal course of filing, registering and prosecuting its own Intellectual Property, but in no event, less than commercially reasonable efforts."  APA § 7.8(d).[4]

Notwithstanding Syntheon's current suggestion to the contrary, the APA does not grant Syntheon any patent prosecution "oversight" rights.  Syntheon Mem. at 17.  Rather, under the APA, Syntheon is given "the opportunity to review and comment on any new Patent Application and *substantive responses* to be filed with any patent office. APA § 7.8(b) (emphasis added). The APA does not require Covidien to offer Syntheon the opportunity to review and comment on *any* PTO filing.  Nor does it require Covidien to provide Syntheon with advance notice of meetings with the PTO.  Furthermore, although Covidien is obligated to provide Syntheon with

---

[3] As noted above, the '358 and '042 Applications at issue in the Motion are governed by the DA and not the APA, and, consequently, do not qualify as "Transferred Intellectual Property," as defined in APA. (*See* n. 1, *supra* .)

[4] The APA provides that if Covidien determines not to file a Patent Application related to the Transferred Intellectual Property, Syntheon may, upon Covidien's prior written approval, prepare and file such application. APA, § 7.8(c).  Covidien may not unreasonably withhold such approval.  *Id.*

advance notice of new Patent Applications and substantive responses, the APA does not require Covidien to incorporate any of Syntheon's comments into its ultimate filings.

### B.  Requests for Continued Applications

Although "requests for continued examination" are included within the APA's definition of Patent Application, RCEs are not typically regarded as "patent applications." (*See* Perkins Aff. ¶ 24.)  Likewise, new patent applications cannot be initiated through the filing of a RCE. (*Id.* ¶ 22.)  Rather, a RCE is a standard form that applicants routinely file to keep open the prosecution of existing patent applications.  37 CFR 1.114(a) ("If prosecution in an application is closed, an applicant may request continued examination of the application by filing a submission…."). (*See id.*, Ex. A)

### C.  Covidien's Prosecution of Patent Applications Under the Parties' Agreements

Since the APA's implementation, Covidien has filed and prosecuted numerous patent applications incorporating Syntheon's "two-stage switch" technology. (Perkins Aff. ¶¶ 8-11.)  To date, based on Covidien's work under the parties' agreements, seven U.S. patents have issued, and two U.S. patent applications – the '358 and '042 Applications – are pending.  (*Id.*)

In January 2015, Covidien informed Syntheon that it was transferring responsibility for all APA-related patent applications and prosecutions from Syntheon's patent counsel, the Mayback firm, to the Carter, DeLuca ("CD") firm.  The formal transfer of responsibility occurred in February 2015.  (*Id.* ¶ 13.)

In the course of the transfer, CD discovered that in connection with the prosecution of the '042 and the '358 Applications, numerous material prior art references were not previously disclosed to the Patent Office by the Mayback firm.  (*Id.* ¶¶ 14-15.)  Further, CD discovered many priority claim errors relating to the '042 and '358 Applications and the already issued

patents related to the "two-stage switch" technology, all of which required correction.  (*Id.* ¶ 29.)

In May 2015, Covidien received a notice of allowance from the PTO on the '358 Application, and an Office Action rejecting the '042 Application.  (*Id.* ¶ 16.)

**D.      Covidien's Prosecution of the '042 Application After the PTO's Initial Rejection**

In view of its ongoing obligations to the Patent Office,[5] on July 20, 2015, Covidien filed an Information Disclosure Statement ("IDS") in connection with the '042 Application, identifying the prior art references that had been uncovered by CD.  (*Id.* ¶ 17.)  Covidien's Associate General Counsel and counsel from CD also met with the Patent Examiner on July 22, 2015 to discuss this newly-uncovered prior art and explain why it had not previously disclosed.  (*Id.* ¶ 18.)  Covidien did not inform Syntheon ahead of time of this meeting, and there was no contractual requirement that it do so since the meeting was not a "new Patent Application or substantive response to be filed with any patent office."  APA § 7.8(b).

On August 18, 2015, Covidien provided Syntheon with a summary of the July 22, 2015 meeting, and a draft of a proposed amendment to the '042 Application designed to overcome the PTO's earlier rejection of that application.  (Perkins Aff. ¶ 19.)  Covidien filed the proposed amendment with the PTO on October 16, 2015, and on November 4, 2015, the PTO accepted Covidien's amendment and issued a Notice of Allowance for the '042 Application.  (*Id.* ¶ 19, 27.)  A Notice of Allowance does not end an applicant's obligations vis-à-vis the PTO.  Rather, the applicant is still required to file RCEs to alert the PTO to additional issues related to the application before the patent actually issues.  (*Id.* ¶ 22.)  In this regard, on May 10, 2016, Covidien informed Syntheon of its intent to file a RCE in connection with the '042 Application

---

[5] *See* Manual of Patent Examining Procedure ("MPEP") § 2001(a) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.").

to correct then recently-discovered defective priority claim issues and to identify additional material prior art that had not been previously identified.  (*Id.* ¶ 33.)  Syntheon never requested a copy of the proposed RCE for review and comment despite knowing of Covidien's intent to file. (*Id.* ¶ 34.)

On June 1, 2016, Covidien filed the RCE.  (*Id.* ¶ 35.)  Together with the RCE, Covidien provided the PTO with a copy of its May 9, 2016 Answer in the instant action, as it is customary to provide the PTO with pleadings from litigation that implicate patent applications at issue, and, in the present case, such disclosure was required to ensure compliance with Covidien's obligations to the PTO.  (*Id.*)

**E.      Covidien's Prosecution of the '358 Application after the Notice of Allowance**

Following the May 2015 Notice of Allowance of the '358 Application, Covidien filed a RCE with an IDS identifying prior art references that CD had discovered.  (*Id.* ¶ 23.)  This filing was mandated by Covidien's obligations to the PTO.  (*Id.* ¶ 15.)  On September 29, 2015, in response to the RCE, the PTO withdrew the earlier Notice of Allowance and issued a Non-Final Rejection of the '358 Application "in view of the newly discovered reference(s)." (*Id.* ¶ 25.)

**F.      Syntheon's Motion for Preliminary Injunction**

Any failure by Covidien to provide drafts of the June 1, 2016 '042-related RCE and the August 24, 2015 '358-related REC to Syntheon prior to filing was inadvertent, and resulted from Covidien's focus on the ordinary meaning of "new Patent Applications" and the meaning of "substantive" as each term is used in APA § 7.8(b).  (Perkins Aff. ¶ 24.)  Covidien was not focused on the cross-reference to "Intellectual Property" in the APA's definition of "Patent Applications" that pulls RCEs within that definition.  (*Id.*)

On August 10, 2016, more than a year after Covidien's July 22, 2015 meeting with the PTO on the '042 Application, and almost a full year after Covidien filed its August 25, 2015

RCE related to the '358 Application, Syntheon informed Covidien that it intended to file the Motion. (*Id*. ¶ 36.)  Upon Covidien's request, Syntheon provided Covidien a copy of the Motion for its review on August 11, 2016.  (*Id*.)  The next day, in an effort to avoid unnecessary motion practice, Covidien offered a short-term resolution to the concern raised by Syntheon, and expressed confidence that a "long-term resolution could be achieved." (*See* Aug. 12, 2016 Email from M. Satchwell to D. Salvesen, attached as Ex. B to Perkins Aff.)  Specifically, Covidien offered to provide Syntheon with at least fourteen days' notice of specified, required Patent Office submissions over the next 60 days, and promised to work with Syntheon during those 60 days to finalize a mutually satisfactory long-term resolution to Syntheon's concerns.  (*Id*.) Notwithstanding the fact that Covidien's offer of short-term relief provided Syntheon with the precise relief it was seeking, while at the same time going beyond Covidien's obligations under the APA and the parties' other agreements, Syntheon rejected the offer, and filed the Motion.

On August 20, 2016, after Syntheon had filed its Motion, Covidien once again proposed a resolution to Syntheon.  (*See* email from D. Apfel to R. Yurko and D. Salvesen attached as Ex. C to the Perkins Aff.)  Covidien acknowledged that Syntheon is entitled to review RCEs before they are filed with the PTO, and offered to "fully disclose to Syntheon anything and everything it intends to file with any RCE," which goes beyond its obligations under the APA.  (*Id*.)  Further, despite the APA's silence regarding when RCEs should be made available to Syntheon prior to filing, Covidien agreed to provide Syntheon with future RCEs 14 days prior to filing.  (*Id*.)  Once again, Syntheon rejected the offered resolution stating that it could not accept the offer because of the "prejudice occasioned to Syntheon."  (*See* Aug. 23 email from R. Yurko to D. Apfel, attached as Ex. D to the Perkins Aff.)  Syntheon refused, however, to describe how it had been or could be prejudiced.  (*Id*.)

### III.   **ARGUMENT**

A preliminary injunction "is an extraordinary and drastic remedy" and is not granted as a matter of right.  *Voice of the Arab World Inc. v. MDTV Med. News Now Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) (noting that a preliminary injunction is extraordinary measure where an agreement exists between the parties);  *see 7-Eleven, Inc. v. Grewal*, 60 F. Supp. 3d 272, 283 (D. Mass. 2014) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008)).  To issue a preliminary injunction, the district court must find that the moving party has established "(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) that the balance of equities is in his favor, and (4) that a preliminary injunction is in the public interest." *JP Powell Clothing LLC*, 590 F. App'x. at 3, 4.  A preliminary injunction is "only [] awarded upon a clear showing that the plaintiff is entitled to such relief."  *Aston Martin Lagonda of N. Am. Inc. v. Lotus Motorsports, Inc*., Civil Action No. 13-11213-DJC, 2013 WL 2467754, at *1-2 (D. Mass. Jun. 6, 2013).  Although First Circuit courts have evaluated the likelihood of success and irreparable harm factors on a sliding scale, "failure to prove irreparable harm is sufficient to deny [plaintiff's] motion for a preliminary injunction."  *Id.*

### A.   **Syntheon is Not Likely to Succeed on the Merits**

Syntheon is unlikely to succeed on the merits.  The APA would have to be rewritten for Syntheon to prevail on its broad claim that "Covidien has breached its contractual obligations to provide Syntheon with the opportunity to review and comment on *any* submission it intends to file with the patent office" (Syntheon Mem. at 18) (emphasis added).  There is no such broad disclosure obligation under the APA.  Rather, the APA only provides Syntheon the right to

9

review and comment on "new Patent Applications and substantive responses" filed with the PTO.  It is, of course, impermissible for the Court to rewrite the parties' contract.  *AccuSoft Corp. v. Palo*, 237 F.3d 31, 41 (1st Cir. 2001) ("We have also made clear that we do not consider it our place to rewrite contracts freely entered into between sophisticated business entities.") (citation omitted).

Per the terms of the APA, Covidien had no obligation to inform Syntheon of its July 22, 2015 meeting with the PTO, which was neither a new Patent Application nor a substantive response filed with the PTO.  As for providing Syntheon with advance copies of two proposed RCEs, Syntheon was not harmed or prejudiced in any way by either nondisclosure.  Neither of these instances is sufficient to merit the sweeping injunctive relief requested in the Motion. *Coady Corp. v. Toyota Motor Dist., Inc.*, 361 F.3d 50, 61 (1st Cir. 2004) (injunctions are a matter of equity so courts are not required to issue one absent ongoing harm or threat of recurrence of harm).  For example, Covidien's filing of RCEs does not deprive Syntheon of any opportunity to review and comment on substantive responses filed with the PTO in the course of continued examination. Indeed, to the contrary, a RCE extends the time to consider further efforts in prosecuting an application.

### B.   Syntheon Will Not Suffer Irreparable Harm

Syntheon will not suffer irreparable harm absent the issuance of a preliminary injunction. The Motion does not come close to meeting Syntheon's burden of proving the requisite irreparable harm.  *See, e.g., Asymmetrx Med., Inc. v. McKeon*, 932 F. Supp. 2d 232, 237 (D. Mass. 2013) ("the burden of demonstrating that a denial of interim relief is likely to cause irreparable harm rests square upon the movant").

First, Syntheon relies exclusively on the APA's injunctive relief language in its effort to prove irreparable harm.  Syntheon Mem. at 15-16.  Syntheon contends that the irreparable harm

prong is satisfied solely because APA § 9.10 provides that "[e]ach of the parties acknowledges and agrees that the other parties would be damaged irreparably in the event any of the provisions of this Agreement are not performed in accordance with their specific terms or otherwise are breached or violated." But in analyzing whether a party will suffer irreparable harm, a court cannot base its conclusion "*solely* on the existence of a contractual provision." *JL Powell*, 590 F. App'x. at 5 (emphasis in original). In *JL Powell*, the First Circuit determined that the district court did not abuse its discretion in finding that the likelihood of success, balance of hardships, and public interest factors all favored the issuance of an injunction. Nevertheless, it vacated a preliminary injunction grant, because the district court erred in its irreparable harm analysis. Specifically, the district court committed reversible error by relying only upon contractual language "agree[ing] that irreparable damage would occur' in the event of a breach," just as Syntheon advocates here. The law requires that such contractual provisions be considered in the context of the other evidence to prove or rebut irreparable harm. *Id*. A party seeking a preliminary injunction must prove actual irreparable harm to obtain a preliminary injunction. *See, e.g., id*. at 5; *Aston Martin*, 2013 WL 2467754, at *1-2 ("failure to prove irreparable harm is sufficient to deny [plaintiff's] motion for a preliminary injunction."). APA § 9.10 in and of itself does not eliminate Syntheon's obligation to prove that it will suffer irreparable harm absent a preliminary injunction. And Syntheon offers no evidence, nor could it, for irreparable harm, separate and apart from the existence of the contractual provision regarding injunctive relief.

Second, Syntheon has not been prejudiced or harmed by the contractual violations it alleges, and absent the requested preliminary injunction it would not be harmed in the future. Indeed, Syntheon does not even allege the requisite actual irreparable harm, nor could it. Aside from citing the APA's acknowledgement that unspecified breaches could result in irreparable

11

harm, Syntheon fails to articulate *any* conceivable harm that has or could have resulted from Covidien's breaches of the "review and comment" provision of the APA.  There has been no such harm, and the denial by this Court of Syntheon's request for a preliminary injunction will not result in any harm to Syntheon in the future.

Syntheon contends that it "will suffer irreparable harm if Covidien is permitted to continue to file submissions and communicate with the Patent Office concerning Syntheon's inventions without the oversight required under the APA."  Syntheon Mem. at 17.  But, the APA does not afford Syntheon any such overarching oversight right.  Rather, the APA provides that Covidien is "solely responsible" for the prosecution of all Transferred Intellectual Property, and gives Covidien broad discretion in patent prosecution decision making, provided that it exercises "commercially reasonable efforts."  APA § 7.8(a), (d).  The APA merely provides Syntheon an opportunity to offer input on specified patent office filings, namely, "new Patent Applications and substantive responses."  *Id.* § 7.8(b).  Even then, Covidien may, but is not required to, take these comments into consideration.  In prosecuting patents, Covidien must simply use the "same degree of care that [it] uses in the normal course of filing, registering and prosecuting its own Intellectual Property…".  *Id.* § 7.8(d).  It has done so.

Syntheon characterizes Covidien's filing of IDSs as somehow "manipulat[ing] the prosecution history," and contends, without any support, that this amounts to irreparable harm.  Syntheon Mem. at 18.  This characterization simply showcases Syntheon's lack of appreciation for the defects in the '042 and '358 Application filings prior to Covidien's filing of the RCEs and associated IDSs.  Prior to the filing the IDSs, numerous material pieces of prior art had not been disclosed to the PTO.  If not properly rectified, these defects could and would have adversely affected not just the '042 and '358 Applications, but additional previously issued patents as well.

12

Covidien's filings have been aimed to ensure that valid, enforceable (and strong) patent claims issue from its patent applications. Any perceived slight to Syntheon that might flow from Covidien having made two RCE filings without prior notice to Syntheon is immaterial and harmless, *i.e.*, a far cry from the requisite irreparable harm.

Third, "[f]or a court to grant injunctive relief, a party must show that ongoing or future irreparable injury is likely in the absence of an injunction." *Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc.*, 759 F. Supp. 2d 110, 126 (D. Mass. 2010). A "small and precisely quantifiable injury" does not warrant preliminary equitable relief. *Id*; *see Coady*, 361 F.3d at 61. Two instances of not providing Syntheon with RCEs ahead of filing do not constitute the requisite ongoing harm. *See Verizon New England, Inc. v. Int'l Brotherhood of Electrical Workers, Local*, 651 F.3d 176, 187 (1st Cir. 2011) (affirming finding of no irreparable injury where alleged actions were not repeated patterns giving rise to an ongoing harm).

Covidien provided Syntheon copies of the past RCEs it did not receive ahead of time, and going forward Covidien has committed to go beyond the requirements of the APA, and to give Syntheon notice of all future RCEs, and all RCE-related filings, at least 14 days in advance of filing. In other words, far from being "irreparable" or ongoing, whatever theoretical harm Syntheon may have experienced from Covidien's past breaches, has been repaired.

Fourth, Syntheon's own reactions to Covidien's alleged contractual breaches makes clear that it has not been harmed or prejudiced by Covidien's errors. To merit injunctive relief of the sort being requested by Syntheon here, a party must show ongoing harm and the very real risk of imminent irreparable harm. *See Coady*, 361 F.3d at 50; *Rohm*, 759 F. Supp. 2d at 126. Here, however, Syntheon delayed by over a year before seeking injunctive relief in response to Covidien's July 22, 2015 meeting with the PTO, and nearly a year before seeking a preliminary

13

injunction to prevent future undisclosed RCE filings. Syntheon's "delay in seeking injunctive relief belies [its] claims for irreparable harm." *See Asymmetrx Med., Inc*, 932 F. Supp. 2d 232 at 237-38 (delay between the "institution of the action" and filing of preliminary injunction motion "detracts from [its] claim of irreparable harm"); *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004) ("delay between the institution of an action and the filing of a motion for preliminary injunction, not attributable to intervening events, detracts from the movant's claim of irreparable harm."). Syntheon does not, and cannot, reconcile its delay in filing the Motion with its assertion of irreparable harm.

Syntheon has been denied nominal opportunities to "review and comment" on certain Patent Office filings, and nothing more. No patent application has been permanently rejected based on any of these alleged lost opportunities. And Syntheon has not been deprived of any patent ownership rights, as all patents issuing from Transferred Intellectual Property are solely owned by Covidien. APA § 3.9. To the extent the Motion articulates any actual harm to Syntheon, past or future, it is purely monetary in nature, namely the alleged deprivation to Syntheon of potential royalty payments on LigaSure® Small Jaw product sales. Syntheon Mem. at 8, n. 5; 18. Such harm, even if it were real (and it is not), is not the stuff of injunctive relief. *See Verizon New England, Inc.*, 651 F.3d at 187.

### C.    The Balance of Equities Weights in Covidien's Favor

Syntheon's contention that the balance of hardships weigh in favor of a preliminary injunction is misguided. If an injunction is denied, Syntheon will suffer no hardship, for all the same reasons it will experience no irreparable harm. In contrast, the relief sought by Syntheon – namely, 14 days advance notice before Covidien communicates with the PTO regarding any matter, no matter how trivial, related to the technology covered by the APA, goes well beyond the requirements of the APA and would, if ordered by the Court, create a genuine administrative

hardship.

The APA does not require Covidien to provide Syntheon with *all* submissions to the PTO, only "new Patent Application and substantive response to be filed with any patent office." APA § 7.8(b).  Nor does the APA require Covidien to provide Syntheon with any and all PTO submissions for review and comment *14 days* before filing, as Syntheon demands.  This phantom 14-day requirement on all filings, indeed on all communications, would impose an undue, unanticipated hardship on Covidien.

Section 7.8(d) of the APA provides that "[i]n filing and prosecuting any Acquired Patents, or discharging any of its obligations hereunder…Covidien AG shall use the same degree of care that Covidien AG uses in the normal course of filing, registering and prosecuting its own Intellectual Property…".  Covidien, and its parent company, Medtronic, possess an expansive, global patent portfolio, consisting of thousands of issued patents and open patent applications. (Perkins Aff. ¶ 3.)  Covidien does not, in the normal course of business, implement a policy that requires all patent office filings, let alone communications, including the most basic communications regarding procedural logistics or timing, to be prepared 14 days in advance of their submission date.  (*See id*. ¶ 38.)  Requiring Covidien to take a different approach with respect to the "two-stage switch" patent portfolio would place an unnecessary burden on Covidien, inconsistent with its ordinary prosecution practice and the APA's express terms.

### D.      The Public Interest Weighs Against Issuing a Preliminary Injunction

The parties apparently agree on the "general rule" that "the public interest is served by enforcing contractual obligations … between consenting parties."  Syntheon Mem. at 18-19.  If anything, this rule supports denying the Motion.  Syntheon's requested relief goes far beyond the four corners of the APA and seeks to rewrite the parties' agreements, by imposing on Covidien new, unbargained-for patent prosecution obligations.  Such impositions run counter to public

policy.  *Accusoft Corp.,* 237 F.3d at 41 ("We have also made clear that we do not consider it our place to rewrite contracts freely entered into between sophisticated business entities.").

Additionally, general patent public policy favors the issuance and maintenance of *valid* and *enforceable* patents.[6]  *See, e.g., Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008) (recognizing a public interest in the enforcement of likely valid and enforceable patents).

### E.    Syntheon is Required to Post Bond

Syntheon falsely states that Covidien has waived its rights for a bond under Fed. R. Civ. P. 65(c) under § 9.10 of the APA.  The parties agreed to forego a bond under § 9.10 of the APA "in the event any of the provisions of this Agreement are not performed in accordance with their specific terms…."  But the relief Syntheon is seeking through the Motion goes beyond the "specific terms" of the APA.  Accordingly, Covidien requests that a bond be posted in the event that a preliminary injunction issues.  *See, e.g., Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*, 77 F. Supp. 2d 199, 205 (D. Mass. 1999) (considering defendant's Rule 65(c) request for plaintiff to post bond filed after order granting preliminary injunction motion).

## IV.    CONCLUSION

For the reasons set forth above, Syntheon cannot meet its burden of proof for the issuance of a preliminary injunction, and its Motion must be denied.

COVIDIEN AG

By its Attorneys,

/s/ Matthew D. Satchwell
Matthew D. Satchwell

---

[6] Under the patent system, patent attorneys and patent agents are required to provide full transparency to the Patent Office regarding any prior art related to a patent application. *See* MPEP § 2001(a).  This rule is aimed at ensuring that the PTO only issues patent claims likely to be valid and enforceable.  Since a patent offers a limited legal monopoly, it is imperative that patents issue only after the applicant proves the invention qualifies for protection under rigorous patent prosecution procedure.  To issue a patent otherwise would harm future innovation.

David J. Apfel (BBO No. 551139)
dapfel@goodwinprocter.com
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Tel: 617.570.1970
Fax: 617.227.8591

Drew M. Wintringham, III
drew.wintringham@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

Matthew D. Satchwell
Illinois Bar No. 6290672
matthew.satchwell@dlapiper.com
Ferlillia V. Roberson
Illinois Bar No. 6296432
ferlillia.roberson@dlapiper.com
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
Tel: 312.368.4000
Fax: 312.236.7516

Date:  September 2, 2016

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was filed through the ECF system and served electronically upon counsel of record for all parties.

/s/ Matthew D. Satchwell
Matthew D. Satchwell

Date:  September 2, 2016