## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ─────────────────────── | ) |  |
| SYNTHEON, LLC, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) | C.A. NO. 16-10244-ADB |
|  | ) |  |
| COVIDIEN AG, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
| ─────────────────────── | ) |  |

### PLAINTIFF'S STATEMENT OF MATERIAL FACTS
### IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Plaintiff Syntheon, LLC submits this Statement of Material Facts of Record in Support of its Motion for Partial Summary Judgment on Count I (Breach of Contract).

### The Parties.

1.      Plaintiff Syntheon, LLC ("Syntheon") is a Florida limited liability company located in Miami. It is engaged in the business of designing and developing new medical devices. Affidavit of Sean McBrayer ("McBrayer Aff."), ¶ 3 (filed herewith).

2.      To date, the four principals of Syntheon have a cumulative total of 95 years of product development in the medical field and are named as inventors on over 200 issued patents. McBrayer Aff., ¶ 3.

3.      Defendant Covidien AG ("Covidien") is a Swiss corporation and a subsidiary of Medtronic Plc. Covidien's Answer to Second Amended Complaint, ¶ 10.

## **The Parties' 2008 Asset Purchase Agreement.**

4.      Typically, once Syntheon completes the development of a new medical device, it will license the technology to another company that will market the product. McBrayer Aff., ¶ 3.

5.      In 2007 and 2008, Syntheon was developing a cordless ultrasonic scalpel and had filed more than a dozen patent applications with the U.S. Patent Office ("PTO") to protect innovations to the scalpel's handle, its transducer, its assembly, and various other features. McBrayer Aff., ¶ 4.

6.      Syntheon agreed to sell these pending patent applications, together with the associated intellectual property and any intellectual property derived therefrom, to Covidien. McBrayer Aff., ¶ 4.

7.      A true and correct copy of the parties' December 2008 Asset Purchase Agreement ("APA") is attached to the McBrayer Affidavit as Exhibit A. McBrayer Aff., ¶ 5.

8.      Under the relevant terms of the APA, Covidien agreed to pay Syntheon, in addition to other consideration, royalties on net sales of any "covered product." McBrayer Aff., at ¶ 5, Ex. A, § 2.6(b).

9.      The term "covered product" is defined broadly in the APA to include "any product" that is within the scope of a patent that issues from the patent applications sold to Covidien, and expressly includes a patent subsequently granted by way of a continuation, a continuation-in-part, and/or a divisional patent application. McBrayer Aff., at ¶ 5, Ex. A, § 1.1 ("Covered Product").

10.     Under the APA, Covidien will owe Syntheon royalties on the sales of any product it sells that is within the scope of an issued patent within the parties' agreement. McBrayer Aff., at ¶ 5, Ex. A, § 1.1 ("Covered Product" and "Acquired Patent").

2

**Syntheon's Contractual Right To File And Prosecute Any
Patent Application That Covidien Has Chosen Not To File.**

11.     In the APA, the parties agreed that if Covidien determined not to file any new

patent application regarding the intellectual property purchased from Syntheon or derived

therefrom, Syntheon has the contractual right to prepare and file the patent application itself,

subject to Covidien's approval, which shall not be unreasonably withheld. Specifically, Section

7.8 of the APA provides as follows:

> 7.8     Patent Filing and Prosecution.
>
> (c)     If Covidien AG determines not to file any particular Patent Application in
> the Specified Countries, or determines not to file any new Patent Application
> regarding an invention contained in the Transferred Intellectual Property as
> disclosed by [Syntheon], Covidien AG shall timely notify [Syntheon] of such
> determination, and following such notification [Syntheon] may, upon Covidien
> AG's prior written approval (which, after review of any such Patent Application,
> shall not be unreasonably withheld), in good faith prepare and file any such
> application at [Syntheon]'s sole and exclusive cost and expense and shall provide
> Covidien AG with copies of all documents filed by [Syntheon] with respect to
> such application. All Patent Applications filed by [Syntheon] as set forth above
> shall be assigned to, and exclusively owned by, Covidien AG.

McBrayer Aff., at ¶ 5, Ex. A § 7.8(c).

12.     The parties' Development Agreement, which was also executed in December

2008, has a provision (Section 9.3(b)) that is substantially similar to Section 7.8(c) of the APA.

A true and correct copy of the parties' December 2008 Development Agreement is attached to

the McBrayer Affidavit as Exhibit B. McBrayer Aff., ¶ 5.

13.     Other provisions of the APA concerning Syntheon's rights in the patent prose-

cution process include § 7.8(b) (which requires Covidien to provide Syntheon with "the opportu-

nity to review and comment on any new Patent Application and substantive responses to be filed

with any patent office regarding" any of the intellectual property sold to Covidien), § 7.8(c)

(which provides that Covidien "shall not abandon, cancel or otherwise compromise" any issued

patent on which royalties are being paid), and § 7.8(d) (which provides that Covidien is obligated

to prosecute these applications "diligently" and "in good faith," among other things, and to "use

the same degree of care that Covidien AG uses in the normal course of filing, registering and

prosecuting its own Intellectual Property"). McBrayer Aff., at ¶ 5, Ex. A, § 7.8(b), (c) and (d).

### The Two-Stage Switch.

14.     One of the technologies developed by Syntheon for the cordless ultrasonic scalpel

was an innovative two-stage switch. McBrayer Aff., at ¶ 6.

15.     Unlike an ordinary switch, the two-stage switch permits the user to easily

perceive, via a tactile feedback, two distinct levels or stages as the switch was being depressed.

As a result, a surgeon using a medical device with a two-stage switch could consciously and

intuitively operate the device between two conditions corresponding to the two stages of the

switch. McBrayer Aff., at ¶ 7.

16.     Syntheon believes that the incorporation of the two-stage switch into the cordless

ultrasonic scalpel was one of the reasons for the scalpel's popularity with surgeons. McBrayer

Aff., at ¶ 8.

17.     Since December 2008, Covidien had filed and prosecuted several patent

applications for various aspects of the technology to insure that the intellectual property rights in

this technology are fully protected. McBrayer Aff., at ¶ 9.

### The LigaSure™ Small Jaw Open Instrument.

18.     Syntheon suspected that Covidien had incorporated the two-stage switch

technology that Syntheon had developed for the ultrasonic scalpel into one of Covidien's other

medical devices, the LigaSure™ Small Jaw Open Instrument (the "LigaSure Instrument").

<u>McBrayer Aff.</u>, at ¶ 10.

19.     Beginning in 2013, and over the ensuing months, Syntheon requested that Covidien review some of the patents that had issued on the two-stage switch technology to confirm that royalties were due to Syntheon on sales of the LigaSure Instrument. <u>McBrayer Aff.</u>, at ¶ 11.

20.     At a meeting in April 2015, Syntheon notified Covidien that it believed that the LigaSure Instrument is covered by claims in one or more of the issued patents. <u>McBrayer Aff.</u>, at ¶ 11.

### Covidien Recognizes A "Divergence" Between Covidien And Syntheon <br> <u>Over The Patent Prosecution Of The Two-Stage Switch Technology.</u>

21.     In January 2015, Covidien acknowledged in an e-mail sent to Syntheon that there was a "potentially growing divergence between Covidien's and Syntheon's interests" regarding the patent prosecution of the two-stage switch technology. A true and correct copy of an e-mail that Stephen Perkins, Covidien's Associate General Counsel, sent to Mr. Sean McBrayer at Syntheon on January 26, 2015 is attached to the McBrayer Affidavit as <u>Exhibit C</u>. <u>McBrayer Aff.</u>, ¶ 12.

22.     At this time, the patent counsel that Covidien was using to prosecute patent applications under the parties' agreements, Mayback & Hoffman, P.C., also represented Syntheon in unrelated matters. <u>McBrayer Aff.</u>, at ¶ 13.

23.     Because of the "growing divergence" between the parties' interests, Covidien decided to replace the patent counsel. <u>McBrayer Aff.</u>, at ¶ 13.

**Covidien Limits The Scope Of The Pending Patent Applications.**

24.     At that time, there were two patent applications pending before the PTO that would expand the patent protection of the two-stage switch technology: Divisional Application No. 14/231,042 ('042 Application) and Continuation-in-Part Application No. 14/607,358 ('358 Application). McBrayer Aff., at ¶ 14.

25.     Between May 2015 and July 2015, there were a series of events relative to these patent applications that Covidien did not disclose to Syntheon until August 18, 2015. McBrayer Aff., at ¶ 15.

26.     In May 2015, the PTO issued favorable notices with respect to both the '042 Application and the '358 Application. McBrayer Aff., at ¶ 16.

27.     The PTO notified Covidien that the claims in the '042 Application were similar to the claims of another patent that the PTO had already issued to Covidien on the two-stage switch technology. McBrayer Aff., at ¶ 16.

28.     The PTO also notified Covidien that it would issue a patent on the '358 Application. McBrayer Aff., at ¶ 16.

29.     On July 20, 2015, after receiving these two favorable notices, Covidien filed an Information Disclosure Statement ("IDS") with the PTO as part of the prosecution of the '042 Application. McBrayer Aff., at ¶ 17.

30.     In the IDS, Covidien identified prior art which Covidien purported to be relevant to '042 Application. McBrayer Aff., at ¶ 17.

31.     In July 2015, again without any notice to Syntheon, Covidien's in-house counsel and its outside patent counsel travelled to Alexandria, Virginia to meet with the Patent Examiner to discuss the prior art that Covidien claimed was relevant to the Applications. McBrayer Aff., at

¶ 18.

32.     The Patent Examiner subsequently suggested, presumably based on the represen-

tations made by Covidien, that the claims in the '042 Application be amended and narrowed.

McBrayer Aff., at ¶ 19.

33.     On August 18, 2015, when Covidien finally disclosed these events to Syntheon,

Covidien proposed to Syntheon that the claims in the '042 Application be restricted (and later,

that those in the '358 Application be restricted). McBrayer Aff., at ¶ 20.

34.     Perhaps not coincidentally, the proposed restrictions would also weaken any

assertion that the patent that issued on the '042 Application would cover the LigaSure

Instrument, which Syntheon believes had been Covidien's aim all along. McBrayer Aff., at ¶ 20.

35.     A true and correct copy of the e-mail that Stephen Perkins, Covidien's Associate

General Counsel, sent to Mr. McBrayer at Syntheon on August 18, 2015 disclosing Covidien's

actions is attached to the McBrayer Affidavit as Exhibit D. McBrayer Aff., at ¶ 20.

36.     Syntheon disagreed with the response proposed by Covidien and provided a

proposed set of alternative claims. A true and correct copy of an e-mail that Mr. McBrayer at

Syntheon sent to Stephen Perkins, Covidien's Associate General Counsel, on September 15,

2015 is attached to the McBrayer Affidavit as Exhibit E. McBrayer Aff., at ¶ 21.

37.     Syntheon requested that Covidien file its proposed amended claims, which were

broader than those proposed by Covidien, and which Syntheon believed would be allowable over

the additional prior art submitted to the PTO. McBrayer Aff., at ¶ 21, Ex. E.

38.     Instead of making the arguments suggested by Syntheon to overcome the issues

raised by the prior art, Covidien rejected Syntheon's proposed submission and proceeded to file

its response. McBrayer Aff., at ¶ 22.

**Syntheon's January 2016 Patent Applications.**

39.     Following the parties' disagreement as how to respond to the PTO, Syntheon

requested that Covidien allow Syntheon to file patent applications containing the broader claims.

McBrayer Aff., at ¶ 23.

40.     On January 26, 2016, Syntheon wrote to Covidien and requested approval

pursuant to the parties' agreements to file, at Syntheon's own cost, the patent application that

was enclosed with the letter. A true and correct copy of the letter that Mr. McBrayer sent to

Stephen Perkins, Covidien's Associate General Counsel, on January 26, 2016 is attached to the

McBrayer Affidavit as Exhibit F. McBrayer Aff., at ¶ 24.

41.     On January 28, 2016, Syntheon sent Covidien a second patent application and

requested that Covidien file that application or allow Syntheon to file it in accordance with the

provisions of the parties' agreement. A true and accurate copy of the letter that Mr. McBrayer at

Syntheon sent to Stephen Perkins, Covidien's Associate General Counsel, on January 28, 2016 is

attached to the McBrayer Affidavit as Exhibit G. McBrayer Aff., at ¶ 25.

**Reasons For Covidien's Refusal To Allow Syntheon To File Applications.**

42.     Thereafter, in a series of letters, Covidien informed Syntheon that it would not

allow Syntheon to file either of the two Patent Applications and identified the purported reasons

for its refusal. McBrayer Aff., at ¶ 26. A true and correct copy of a letter that Stephen Perkins,

Covidien's Associate General Counsel, sent to Mr. McBrayer at Syntheon on February 9, 2016 is

attached hereto as Exhibit H. A true and correct copy of a letter that Mr. Perkins sent to Mr.

McBrayer on March 9, 2016 is attached hereto as Exhibit I. A true and correct copy of a letter

that Matthew Satchwell, Esq. (Covidien's attorney) sent to Richard J. Yurko, Esq. (Syntheon's

attorney) on March 22, 2016 is attached hereto as <u>Exhibit J</u>. A true and correct copy of a letter

that Matthew Satchwell, Esq. sent to Richard J. Yurko, Esq. on May 5, 2016 is attached hereto as

<u>Exhibit K</u>. <u>McBrayer Aff.</u>, at ¶ 26.

43.     In its correspondence, Covidien stated that it had withheld its approval for two

reasons: (1) because Covidien believed that if the Patent Applications were filed the claims

therein would not be allowed by the PTO; and (2) because Covidien believed that, even if the

claims in the proposed Patent Applications were patentable, the resulting patents would not

provide any additional meaningful patent protection or commercial value to Covidien. <u>McBrayer</u>

<u>Aff.</u>, at ¶ 26, Exs. H-K.

44.     Covidien did not contend that the filing of either of the Patent Applications would

deprive Covidien of any of the benefits of the parties' agreements. <u>McBrayer Aff.</u>, at ¶ 27.

45.     Set forth below is Interrogatory No. 7 that was propounded to Defendant

Covidien AG in this action to ascertain the reasons for Covidien's decision to not approve

Syntheon's requests to file the January 2016 Patent Applications and Covidien AG's Response:

<u>INTERROGATORY NO. 7:</u>

        State the bases for Covidien's decision to not approve Syntheon's requests
to file the January 2016 Patent Applications.

<u>RESPONSE TO INTERROGATORY NO. 7:</u>

        Defendant specifically objects to this Interrogatory to the extent it seeks
documents protected by the attorney-client privilege, work product doctrine, or
any applicable privilege or immunity.

        Subject to and without waiving the foregoing General and Specific
objections, Defendant responds as follows:

        Covidien does not believe it is commercially reasonable to file the
proposed January 2016 Patent Applications because the claims of the proposed
applications are not patentable over known prior art. Additionally, it is not

commercially reasonable to file the proposed January 2016 Patent Applications because the proposed Applications were duplicative of other patents held by Covidien and contained limitations that were not supported by the original specification and therefore, would not provide any additional meaningful patent protection or commercial value to Covidien. For example, the draft claims contain limitations and subject matter that did not appear in any two-stage switch application until October 19, 2012. Therefore, every pending claim in Syntheon's draft application would only be entitled to claim priority to that date, and the prior related published applications, such as the '505 and '545 applications (which published in March 2011 and January 2011, respectively) would be prior art to the proposed claims. Those applications when combined with other art known to Covidien and Syntheon, including other patents and applications in the two-stage switch patent family, would render the claims unpatentable and/or invalid.

Further, Covidien already has seven issued patents and two pending applications directed to various embodiments of the two-stage switch technology, and Covidien does not believe that additional, duplicative patents will provide any additional protection, especially since the proposed Applications would be effectively unenforceable as invalid over the prior art even if they did issue. Covidien also incorporates by reference as set forth fully herein its May 9, 2016 Answer and Affirmative Defenses.

Additionally, pursuant to Fed. Rule Civ. P. 33(d), Plaintiffs may derive or ascertain non-privileged information responsive to this interrogatory from documents produced or to be produced in this matter to the extent such information exists. See, e.g., COV008813 – COV008814; COV008815 – COV008816; COV008866 – COV008867; COV008868 – COV008869; COV008855 – COV008858; COV008870 – COV008874. Covidien is continuing to investigate the subject matter of this interrogatory and reserves the right to supplement its response to the extent it locates any non-privileged, relevant documents or information responsive to this interrogatory in accordance with the procedures and timetables established by the Federal Rules of Civil Procedure, the Court's Local Rules, and the Scheduling Order entered in this Case, and after Covidien has been afforded an adequate opportunity to investigate Syntheon's allegations through discovery in this Case.

Affidavit of Douglas W. Salvesen, Esq., ¶ 2 (filed herewith).

SYNTHEON, LLC

By its attorneys,

/s/ Richard J. Yurko

_____

Richard J. Yurko (BBO# 538300)
Douglas W. Salvesen (BBO# 550322)
Anthony B. Fioravanti (BBO# 664823)
YURKO, SALVESEN & REMZ, P.C.
One Washington Mall
Boston, MA 02108
(617) 723-6900

Ann Lamport Hammitte (BBO No. 553263)
Thomas P. McNulty (BBO No. 654564)
LANDO & ANASTASI, LLP
Riverfront Office Park
One Main Street, 11th Floor
Cambridge, MA  02142
(617) 395-7000

Dated: January 30, 2017

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and served electronically on all registered participants as identified in the Notice of Electronic Filing (NEF), which includes counsel for all parties.

/s/ Douglas W. Salvesen

_____

Dated: January 30, 2017