## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Syntheon, LLC,<br><br>     Plaintiff,<br><br> v.<br><br>Covidien AG,<br><br>     Defendant. | Civil Action No. 16-10244-ADB |

## **DEFENDANT COVIDIEN'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

**Page**

I. Introduction ........................................................................................................................ 1

II. Syntheon's Proposed Constructions Violate the Basic Tenets of Claim Construction Law and Should be Rejected ......................................................................... 1

    A. "Operational Conditions" (Claims 1, 8, 16, and 20 of the '269 Patent) ................. 1

    B. "Control Device Operable To Carry Out At Least Two Operational Conditions of A Surgical Device" (Claims 1, 16, and 20 of the '269 Patent) ........................................................................................................... 5

    C. "A Single Actuation Member" (Claims 16 and 20 of the '269 Patent) ................. 8

    D. "Switch" (Claims 11 and 13 of the '269 Patent) .................................................. 10

    E. "Button" (Claims 1, 8, 9, 10, 11, 15, 16, and 20 of the '269 Patent) .................... 11

    F. "Effecting A First [or Second] of the At Least Two Operational Conditions" (Claims 1, 16 and 20 of the '269 Patent) ......................................... 13

III. Conclusion ........................................................................................................................ 14

-ii-

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*
  713 F.3d 1090 (Fed. Cir. 2013)..................................................................................................9

*Chicago Bd. Options Exchange, Inc. v. Int'l Sec. Exchange, LLC*,
  677 F.3d 1361 (Fed. Cir. 2012)..................................................................................................6

*Eon Corp. v. Silver Spring Networks*,
  815 F.3d 1314 (Fed. Cir. 2016)..................................................................................................2

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011)............................................................................................3, 13

*Gillespie v. Dywidag Sys. Int'l, USA*,
  501 F.3d 1285 (Fed. Cir. 2007)..................................................................................................9

*Goldenberg v. Cytogen, Inc.*,
  373 F3d 1158 (Fed. Cir. 2004)...................................................................................................2

*Honeywell Int'l v. Universal Avionics Sys.*,
  488 F.3d 982 (Fed. Cir. 2007)....................................................................................................2

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995)....................................................................................3, 8, 10, 12

*O2 Micro Int'l v. Beyond Innovation Tech.*,
  521 F.3d 1351 (Fed. Cir. 2008).........................................................................................passim

*On Demand Machine Corp. v. Ingram Indus., Inc.*,
  442 F.3d 1331 (Fed. Cir. 2006)..................................................................................................7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ..............................................................................2, 3

*Robert Bosch, LLC v. Snap-On Inc.*,
  769 F.3d 1094 (Fed. Cir. 2014).........................................................................................5, 6, 7

*Vitronics, Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)...........................................................................................passim

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015)..............................................................................................5, 6

I.     **INTRODUCTION**

Syntheon, LLC's ("Syntheon") claim construction analysis is fatally flawed for several reasons.  First, Syntheon largely proposes that the disputed claim terms do not require construction, and that undefined plain and ordinary meanings generally suffice.  However, not only are the disputed terms facially ambiguous, and thus incapable of a uniform plain and ordinary meaning, but the parties also disagree regarding the scope of these terms.  In such instances, "the court, not the jury, must resolve the dispute." *O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  Second, Syntheon largely relies on extrinsic dictionary definitions and inventor testimony in support of its constructions.  Such reliance is misguided.  The Federal Circuit has repeatedly held that intrinsic evidence must first be reviewed, and in many cases intrinsic evidence by itself is sufficient to define a term.  *See, e.g., Vitronics, Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).  Under no circumstances can extrinsic evidence be used to contradict intrinsic support, and that is precisely what Syntheon seeks.  Such efforts should be widely rejected.  Thus, for the reasons set forth below and in Covidien AG's ("Covidien") opening brief (D.I. 79), Covidien respectfully requests the Court adopt Covidien's proposed claim constructions.

II.    **SYNTHEON'S PROPOSED CONSTRUCTIONS VIOLATE THE BASIC TENETS OF CLAIM CONSTRUCTION LAW AND SHOULD BE REJECTED.**

Covidien addresses each of the contested claim terms in turn below.

   A.    **"Operational Conditions" (Claims 1, 8, 16, and 20 of the '269 Patent)**

| Covidien | Syntheon |
| --- | --- |
| Condition in which an amount of power is delivered to drive the surgical device | Plain and ordinary meaning.<br><br>Alternative: states of the surgical device when used in surgery, such as grasping, clamping, cutting, cauterizing, or coagulating. |

1

Syntheon's efforts to avoid any meaningful construction, either through its proposal that the term "operational conditions" does not require construction or its proffered alternative construction, conflict with a long line of Federal Circuit jurisprudence. The term "operational conditions" is on its face ambiguous and is not a recognized term of art, thus necessitating a construction. *See, e.g.*, *Goldenberg v. Cytogen, Inc.*, 373 F3d 1158, 1164 (Fed. Cir. 2004) ("Where a claim term has no ordinary and customary meaning, a court must resort to the remaining intrinsic evidence – the written description and the prosecution history – to obtain the meaning of that term.") (citation omitted); *see also Honeywell Int'l v. Universal Avionics Sys.*, 488 F.3d 982, 991 (Fed. Cir. 2007) ("Without a customary meaning of a term within the art, the specification usually supplies the best context for deciphering claim meaning."). Even if there is general understanding of a term as defined by a dictionary, that meaning cannot override the specification, and a construction consistent with the specification is required. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (*en banc*) (concluding that the ordinary meaning must comport with the specification). Further, "[w]hen the parties raise an actual dispute regarding the proper scope of [the] claims, the court, not the jury, must resolve the dispute." *O2 Micro*, 521 F.3d at 1360; *see also Eon Corp. v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) ("By determining only that the terms should be given their plain and ordinary meaning, the court left this question of claim scope unanswered, leaving it for the jury to decide.  This was legal error.") (citing *O2 Micro*, 521 F.3d at 1362).  Thus, contrary to Syntheon's assertion, the term "operational conditions" requires a construction from the Court.

In support of its alternative construction, Syntheon relies almost entirely on extrinsic dictionary definitions and inventor testimony.  That is also wrong.  "In most situations, an analysis of the intrinsic evidence *alone* will resolve any ambiguity in a disputed claim term.  In

such circumstances, *it is improper to rely on extrinsic evidence*." *Vitronics*, 90 F.3d at 1583 (emphasis added); *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1320 (Fed. Cir. 2011) (noting that the patent specification is the best guide and often dispositive with respect to claim construction). That is the case here, and Covidien demonstrated in its opening brief that the intrinsic evidence, both the specification and prosecution history of U.S. Patent No. 8,742,269 ("the '269 Patent"), expressly characterize "operational conditions" as a condition in which an amount of power is delivered to drive the surgical device. *See* D.I. 79 at 10-13.

Even in instances where extrinsic evidence is considered, it *always* remains inferior to intrinsic evidence. *See, e.g.*, *Phillips*, 415 F.3d at 1317; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995). As such, the extrinsic evidence offered by Syntheon – the dictionary definitions and the inventor testimony[1] – should be given little, if any, probative weight in light of the clear intrinsic evidence presented by Covidien. *See* D.I. 79 at 10-13 (discussing intrinsic evidence for "operational condition"). It is also blackletter law that extrinsic evidence cannot ever be used to contradict intrinsic evidence. *See, e.g.*, *Markman*, 52 F.3d at 981. In this instance, Syntheon's proposed construction is facially incorrect at least because it violates that bedrock principle of claim construction by improperly relying on extrinsic evidence to support a construction in the abstract, despite intrinsic evidence that expressly defines "operational conditions" in relation to power delivered to the surgical device.

---

[1] Courts have cautioned against the use of inventor testimony during claim construction, stating that such testimony is typically unreliable and not entitled to any deference. See *Markman*, 52 F.3d at 983 (concluding that inventor testimony "on the proper construction of the claim is entitled to no deference"); *see also* D.I. 79 at 6-7 (citing cases relating to the limited use of inventor testimony during claim construction as such testimony is generally "irrelevant," "self-serving," and "weak extrinsic evidence"). Furthermore, the inventor testimony offered by Mr. Derek Deville on behalf of Syntheon actually favors Covidien insofar as Mr. Deville agrees that the "operational conditions" define power levels, consistent with Covidien's proposed construction. See D.I. 78, Ex. B, ¶ 5; see also D.I. 78 at 14-15.

Syntheon's reliance on extrinsic evidence belies the lack of any intrinsic evidence to support its proposed construction. In fact, the intrinsic evidence Syntheon does attempt to cite is irrelevant to the claimed "operational conditions." First, the passages in column 3 of the '269 Patent cited by Syntheon (D.I. 78 at 14) concern related prior art, ***not*** the claimed invention. Second, the additional actions cited by Syntheon (e.g., grasping, clamping) are not "operational conditions" because they are not performed by the claimed "button," as required by the independent claims 1, 16, and 20. *See, e.g.*, '269 Patent, 39:28-40:2 (claiming that a particular "button" must "effect" the "operational conditions"). In other words, the actions cited by Syntheon are brought about through mechanisms separate from the claimed "button," and therefore irrelevant to determining the proper scope of the limitations recited in the claims. *See also* D.I. 79 at 12.

Unlike Syntheon, Covidien identified the intrinsic evidence that defines the "operational conditions" effected by the claimed "button." As the '269 specification makes clear, the claimed "operational conditions" relate to different power settings. *See* D.I. 79 at 10-12. For example, the "first operational condition is power delivered from the power supply" and "the second operational condition is power delivered from the supply." '269 Patent, 6:44-49. The specification also discloses that applying different pressure to the claimed "button" allows "an operator to move from the first switch mode, i.e., first power level, to the second switch mode, i.e., second power level . . . ." *Id.*, 35:40-43. Finally, the prosecution history bolsters Covidien's construction as the prior art was distinguished by explaining that in the prior art, the "user cannot carry out two different operational conditions (e.g., MAX and MIN power settings) ***by pressing just a single activation member of the button member*** . . . ." D.I. 79, Ex. B ('269 Patent File History, 12/9/13 Reply to 9/26/13 Office Action). Thus, the prosecution history

4

clarifies that the claimed invention is different from prior art because the claimed "button" effects "operational conditions" relating to power.  Covidien's proposed construction for "operational conditions" is supported by the intrinsic evidence, and accordingly, the Court should adopt that construction.

      **B.**      **"Control Device Operable To Carry Out At Least Two Operational Conditions of A Surgical Device" (Claims 1, 16, and 20 of the '269 Patent)**

| Covidien | Syntheon |
|---|---|
| This claim element is governed by 35 U.S.C. § 112, ¶ 6.<br><br>The disclosed structure is: "assembly consisting of a processor and related circuitry"<br><br>The disclosed function is: "to carry out at least two operational conditions" | Plain and ordinary meaning.<br><br>Alternative: a device, for regulating the operation of a surgical device, that is capable of carrying out two or more operational conditions of the surgical device |

This term should be construed as means-plus-function pursuant to 35 U.S.C. § 112, ¶ 6, with the relevant structure consisting of a processor and related circuitry. Syntheon's arguments in opposition are unavailing.  As explained in Covidien's opening brief, while claim terms without the word "means" are presumptively not means-plus-function, this presumption is not a strong one,[2] and can be overcome if it can be shown by a preponderance of evidence that the claim language lacks sufficient structure.  *See, e.g.*, *Robert Bosch, LLC v. Snap-On Inc.*, 769

---

[2] In *Williamson v. Citrix Online, LLC*, the Federal Circuit expressly overruled the notion that a "strong" presumption against means-plus-function should be given if the word "means" is not used:

> Our consideration of this case has led us to conclude that such a heightened burden is unjustified and that we should abandon characterizing as "strong" the presumption that a limitation lacking the word "means" is not subject to § 112, para. 6.  That characterization is unwarranted, is uncertain in meaning and application, and has the inappropriate practical effect of placing a thumb on what should otherwise be a balanced analytical scale.

792 F.3d 1339, 1349 (Fed. Cir. 2015).

5

F.3d 1094, 1097 (Fed. Cir. 2014); *see also* D.I. 79 at 8, 14.  That is precisely the case here, because a person of ordinary skill in the art would not recognize the term "control device" to describe any particular structure or component.  *See Williamson*, 792 F.3d at 1350.  "Device" as used in the context of this claim term is nothing more than a substitute for "means," and the use of this nonce word does not convey any structure that could place the claim term outside of a means-plus-function expression.

Notably, Syntheon does not contest that the phrase "control device" lacks structure.  Indeed, in its opening brief, Syntheon only states "the term 'control device,' taken in the overall context of the phrase and of the claim, connotes sufficient ***functionality*** to prevent this presumption [against means-plus-function] from being rebutted."  D.I. 78 at 13 (emphasis added).  Functionality is, however, irrelevant with respect to the threshold inquiry of whether a term should be subject to means-plus-function.  ***Structure*** is required to show that the term should not be subject to means-plus-function, and any analysis (or even a cursory statement) relating to any structure suggested by the "control device" is noticeably missing from Syntheon's argument.  *See, e.g.*, *Robert Bosch*, 769 F.3d at 1097.

Syntheon also does not contest Covidien's identified function of this claim term under the means-plus-function analysis.[3]  D.I. 78 at 13 ("Covidien proposes the claimed function is to 'carry out at least operational conditions,' which on its face is appropriate . . . .").  Rather, Syntheon points out that the identified function incorporates the phrase "operational conditions," and takes issue with the scope of Covidien's construction of that term.  D.I. 78 at 13.  Relying on

---

[3] As explained in Syntheon's opening brief, once a term is determined to fall under the purview of means-plus-function, the scope of the claim term is determined based on a two-step inquiry.  The claimed function must be identified followed by an analysis of the structures disclosed by the specification said to perform that function.  *See, e.g., Williamson*, 792 F.3d at 1351; *Chicago Bd. Options Exchange, Inc. v. Int'l Sec. Exchange, LLC*, 677 F.3d 1361, 1367 (Fed. Cir. 2012).

6

its flawed interpretation of "operational conditions" (which improperly and expansively encompasses unclaimed actions such as grasping, clamping, cutting, etc.), Syntheon proposes that the relevant structures for the means-plus-function analysis "include the various triggers, handles, levers, and the like." *Id.*

However, Syntheon's identified structures highlight the fallacy of its proposed construction of "operational conditions." As noted above (*see supra* Section II.A), the '269 claims require that "operational conditions" be effected by the claimed "button," and thus, any structure associated with the identified function (*i.e.*, "to carry out at least two operational conditions") in the means-plus-function analysis must carry out the "operational conditions" effected by the "button" in some way. Syntheon's identification of structural components separate from the "button" completely ignores that requirement, and would effectively allow any component of the claimed surgical device to effect the "operational conditions." In other words, Syntheon's inclusion of additional structures would effectively read the term "button" out of the claims. *See, e.g.*, *On Demand Machine Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1344 (Fed. Cir. 2006) ("Care must be taken lest word-by-word definition, removed from the context of the invention, leads to an overall result that departs significantly from the patented invention.").

On the other hand, Covidien's identified structure – "assembly consisting of a processor and related circuitry" – properly focuses on the role of the claimed "button" (*i.e.*, delivering power), and identifies components relevant to that role. As the intrinsic evidence explains, the processor and related circuitry are used to carry out "operational conditions." *See, e.g.*, '269 Patent, 11:66-12:7; *see also* D.I. 79 at 15-16 (describing additional intrinsic evidence in support of Covidien's proposed construction). For the reasons set forth above, this claim term should be

construed under §112 ¶6 as a means-plus-function term, and the Court should adopt the identified function and structure proposed by Covidien.

**C.** **"A Single Actuation Member" (Claims 16 and 20 of the '269 Patent)**

| Covidien | Syntheon |
| --- | --- |
| Single depressible button | Plain and ordinary meaning. <br><br> Alternative: a single device configured to move the two-actuation-position button |

Syntheon incorrectly concludes that this term does not require construction. Contrary to Syntheon's assertion, there is no commonly understood meaning of "single actuation member" to one of ordinary skill in the art. Even assuming that the term consists of words that are generally understood (to be clear, Covidien does not agree with that conclusion), it does not mean that the term as whole has a uniform meaning to one of ordinary skill in the art as suggested by Syntheon. Moreover, because the parties dispute the scope of the term the Court must resolve the dispute. *O2 Micro*, 521 F.3d at 1360. A construction of this term is necessary.

Syntheon's alternative construction of "a single actuation member" should be given little, if any, weight as Syntheon's reasoning violates tenets of claim construction by once again focusing on extrinsic evidence when intrinsic evidence directly defines the scope of this term. Similar to its analysis for the claim term "operational conditions," Syntheon effectively ignores the '269 patent and instead relies on extrinsic dictionary definitions and inventor testimony to support its proffered construction. Again, that approach is always improper. "In most situations, an analysis of the intrinsic evidence *alone* will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583; *see also, e.g.*, *Markman*, 52 F.3d at 981 (advocating that intrinsic evidence should be considered first before extrinsic evidence). Such is true here as the '269 specification and prosecution

8

history set forth a clear definition of this term, which is captured by Covidien's proposed construction. *See* D.I. 79 at 17-18.

The lone intrinsic evidence cited by Syntheon is a portion of the '269 prosecution history. Contrary to Syntheon's contentions, however, the amendments made to claim 16 and 20 actually support Covidien's construction. As explained in Covidien's opening brief, claims 16 and 20 were amended during prosecution to add "a single actuation member" to clarify that the claimed "button" was a single depressible button. *Id.* The patentee explained that the '269 invention differed from prior art, because unlike the prior art, its "two-actuation-position button" did not have two *separate* actuation members, and was limited to a *single* actuation member, as represented by a single depressible button. D.I. 79, Ex. B at 3-5. In so doing, the patentee disclaimed scope and narrowed its invention. *See, e.g.*, *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013) ("[W]hen the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered."). Syntheon's proposed construction, which fails to recognize this critical distinction, would broadly encompass all two-actuation-position buttons, including those with separate actuation members expressly disclaimed by the patentee.

In contrast, Covidien's proposed construction is consistent with the narrowing statements made by the patentee in the prosecution history, and construes "a single actuation member" as a "single depressible button." The prosecution history is critical to a proper construction (*see, e.g.*, *Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007)), and it is respectfully submitted that the Court should adopt Covidien's construction for this term.

### D. "Switch" (Claims 11 and 13 of the '269 Patent)

| Covidien | Syntheon |
|---|---|
| A device for making or breaking a two-pole connection in an electrical circuit | Plain and ordinary meaning. |

Syntheon's proposal that "switch" does not require construction is flawed. Similar to other claim terms to which Syntheon contends constructions are not needed (*see, e.g.*, *supra* Sections II.A, II.C), the parties dispute the scope of the term, and require the Court's guidance on its construction. *O2 Micro*, 521 F.3d at 1360. Moreover, "switch" as used in the context of these patent claims is a very specific type of device that is not commonly understood. Syntheon provides no evidence that the particular type of "switch" claimed in the '269 patent is "used and employed virtually every day by every person living in a first-world country such as the United States." D.I. 78 at 17. The ambiguity of the term "switch," especially given the various contexts in which a switch can be used and that a switch is used in a particular fashion according to the '269 Patent, further suggests that the Court should issue a construction.

Additionally, Syntheon's criticism of Covidien's proposed construction is misguided. Once again, Syntheon improperly relies on an extrinsic evidence in an attempt to rebut intrinsic evidence that expressly defines the scope of the claim term. *See, e.g.*, *Vitronics*, 90 F.3d at 1583 (stating that when intrinsic evidence alone can resolve ambiguity in claim term, extrinsic evidence should not be considered); *Markman*, 52 F.3d at 981 (expressing that intrinsic evidence is superior to extrinsic evidence). Covidien's construction, which relies on and is consistent with the intrinsic evidence of the '269 Patent (*see* D.I. 79 at 19-20), should be adopted by the Court.

10

### E. "Button" (Claims 1, 8, 9, 10, 11, 15, 16, and 20 of the '269 Patent)

| Covidien | Syntheon |
|---|---|
| A device for making or breaking a two-pole connection in an electrical circuit | |

As an initial matter, Syntheon's complaint that "button" was not on Covidien's Proposed List of Claim Terms for Construction is without merit. That list was preliminary in nature and Covidien reserved the right to amend its proposed terms and constructions throughout claim construction discovery, which it timely did. *See* Ex. A (Covidien's Preliminary Proposed Claim Constructions and Intrinsic Evidence) (adding "button" to the list of terms requiring construction and timely serving this disclosure pursuant to the Court's January 17, 2017 Order). Syntheon has not claimed it was prejudiced by the later disclosure of the "button" term, nor can it, given the timeliness of Covidien's amendment and that the preliminary construction for "button" was provided at the same time as Covidien's other initial constructions. *See id.* Syntheon has had the same amount of time to review all of Covidien's proposed constructions. Also, Syntheon's allegation that "button" was belatedly added by Covidien in an attempt to avoid infringement is nonsense. There are no allegations of patent "infringement" in this litigation by Syntheon or any other party. Indeed, Covidien's timely disclosure of it proposed construction for the term "button" was properly made to allow the Court an opportunity to determine the scope of this dispute term.

Second, and yet again, Syntheon's analysis hinges on incorrect conclusions that the term does not need construction and that any construction should be governed by extrinsic evidence. The term "button" is used in the context of the '269 specification and claims in a unique way, and as such, is not susceptible to a common meaning. The parties also dispute the scope of the

11

term, and for these reasons, the Court should resolve the dispute. *Cf. O2 Micro*, 521 F.3d at 1360.

Syntheon's reliance on extrinsic evidence once more violates tenets of claim construction, as it ignores clear intrinsic evidence explaining the meaning of "button." *See* D.I. 79 at 21-22 (disclosing intrinsic evidence). The dictionary definition evidence submitted by Syntheon is unavailing in light of the passages of the '269 specification cited by Covidien that detail the meaning of the term "button." *See, e.g.*, *Vitronics*, 90 F.3d at 1583; *Markman*, 52 F.3d at 981. "The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Vitronics*, 90 F.3d at 1582. And consistent with the intrinsic evidence, Covidien proposes that "button" be construed as "a device for making or breaking a two-pole connection in an electrical circuit." D.I. 79 at 21-22. Syntheon's additional critique that Covidien's proposed construction for "button" lacks a spring is without merit at least because the spring element is identified by an extrinsic dictionary definition that carries no weight given the intrinsic evidence directly on point.

Third, while Syntheon correctly notes that Covidien provided the same constructions for "switch" and "button," Syntheon mistakenly concludes that different terms are automatically precluded from having the same meaning. Here, the '269 specification routinely interchanges "switch" and "button," and furthermore, expressly describes both terms as performing the same function. *See* D.I. 79 at 51-52. The intrinsic evidence calls for parallel constructions for "switch" and "button," and the Court should adopt Covidien's proposed construction for both terms.

**F.    "Effecting A First [or Second] of the At Least Two Operational Conditions" (Claims 1, 16 and 20 of the '269 Patent)**

| Covidien | Syntheon |
|---|---|
| Causing a first/second operational condition | Plain and ordinary meaning.<br><br>Alternative: bringing about or accomplishing the first [or second] operational condition |

Syntheon's proposals for this term suffer from the same fallacies as its other proposed constructions. Not only does this term require construction because the parties dispute its scope (*see O2 Micro*, 521 F.3d at 1360), but Syntheon's alternative construction also lacks support from any instrinsic evidence. As repeated herein, that approach is improper when intrinsic evidence expressly defines the scope of the term. *See, e.g.*, *Eon-Net LP*, 653 F.3d at 1320. In fact, for this limitation Syntheon does not even attempt to introduce any *extrinsic* evidence. Syntheon's alternative construction is thus wholly unsupported, and should be flatly rejected.[4]

Instead, Syntheon baldly concludes that "'effecting' is a common word that is easily familiar to anyone who speaks the English language" (D.I. 78 at 17), and then points to similarities between the parties' constructions as evidence that "effecting" is well understood such that a plain and ordinary meaning requiring no construction is appropriate. To the contrary, the parties' competing constructions actually further highlight the necessity for a construction.

Syntheon argues that "effecting" should be construed as "bringing about or accomplishing," whereas Covidien proposes "causing." Although Syntheon provides no clarity regarding the meaning of its construction, Covidien makes clear that "causing" is necessary and consistent with the intrinsic evidence because "causing" conveys the patentees' intent that the

---

[4] On the other hand, Covidien's proposal is consistent with the '269 specification (*see* D.I. 78 at 23-25), and should be adopted by the Court. For example, the '269 specification clarifies that the claimed "button" "effects" the "operational conditions" when the button is depressed to cause activation of power levels (*i.e.*, operational conditions). *See, e.g.*, '269 Patent at 34:61-35:4; 35:20-38.

13

claimed button must *directly* cause the operational conditions (*see* D.I. 79 at 23-25).  Syntheon's construction, on the other hand, could broadly encompass situations where depression of the button may also occur passively or incidentally to operational conditions.  As such, the similarity of the parties' proposed constructions magnifies the need for a construction (rather than suggesting a plain and ordinary meaing is sufficient), because a plain and ordinary meaning construction would lead to diverging views and arguments regarding the scope of the term.  Syntheon's "plain and ordinary meaning" proposal would do nothing to resolve the underlying dispute over the appropriate construction of this term, and should be rejected.

### III.  CONCLUSION

In view of the foregoing, Covidien respectfully requests that this Court adopt Covidien's proposed claim constructions.

Dated: March 31, 2017	Respectfully submitted,

/s/ Matthew D. Satchwell
Matthew D. Satchwell
Illinois Bar No. 6290672
matthew.satchwell@dlapiper.com
Ferlillia V. Roberson
Illinois Bar No. 6296432
ferlillia.roberson@dlapiper.com
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
Tel: 312.368.4000
Fax: 312.236.7516
Drew M. Wintringham, III
drew.wintringham@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

David J. Apfel (BBO No. 551139)
dapfel@goodwinprocter.com
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Tel. 617.570.1970
Fax: 617.227.8591

ATTORNEYS FOR DEFENDANT
COVIDIEN AG

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2017, a true and correct copy of the above and foregoing document was forwarded by electronic mail to all counsel of record as follows.

Douglas W. Salvesen
dsalvesen@bizlit.com

Richard J. Yurko
ryurko@bizlit.com

Anthony B. Fioravanti
afioravanti@bizlit.com

Ann Lamport Hammitte
AHammitte@lalaw.com

Thomas P. McNulty
TMcNulty@lalaw.com

                                                          */s/ Matthew D. Satchwell*
                                                          Matthew D. Satchwell