**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SYNTHEON, LLC,<br><br>    Plaintiff,<br>v.<br><br>COVIDIEN AG,<br><br>    Defendant. | Civil Action NO. 16-10244-ADB<br>Leave to File Granted on April 19, 2017 |

## DEFENDANT COVIDIEN AG'S SUR-REPLY IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

  Plaintiff Syntheon LLC's Reply Memorandum in support of its motion for partial summary judgment ("Reply") is an exercise in distraction. One would never know from the Reply that Plaintiff is seeking judgment as a matter of law on a fact-intensive issue of "reasonableness," *i.e.*, an issue for which summary judgment is ill-suited, and on which it is rarely, if ever, given. The Reply does not once mention the central contention of Plaintiff's summary judgment motion, namely that Defendant Covidien AG purportedly acted in an objectively and indisputably "unreasonable" manner when it declined to give Plaintiff permission to file two illegitimate patent applications. Instead, the Reply chooses to mischaracterize Covidien's opposition arguments, and to misstate the law and the facts. This Sur-reply addresses Plaintiff's mischaracterizations and misstatements, and endeavors to focus the Court's attention on the parties' genuine factual dispute regarding the reasonableness of Covidien's decision not to allow the filing of Plaintiff's proposed patent applications, which is the core factual dispute that precludes summary judgment.

1.      *Foundation of Covidien's Opposition* – Citing to page 1 of Covidien's Opposition, the first substantive sentence of Syntheon's Reply asserts that the "foundation" of Covidien's opposition to summary judgment is Covidien's supposed view that "Syntheon is seeking to file patent applications that Syntheon knows will be rejected by the Patent Office." *Reply at 1*. But the "foundation" of Covidien's Opposition has nothing whatsoever to do with Syntheon's "knowledge." Indeed, nowhere on the page of the Opposition cited by Syntheon is there any mention of Syntheon's knowledge. Rather, that page, as well as the entire Opposition, focuses on the parties' dispute regarding the reasonableness of Covidien's decision not to consent to Syntheon's request to file its proposed patent applications, and on Covidien's knowledge and belief that: (i) the proposed applications are unpatentable; and (ii) filing the applications would expose Covidien to substantial harm. It is the parties' dispute, and Covidien's, not Syntheon's, knowledge and beliefs that are the "foundation" of the Opposition.

2.      *The Dispute at Issue Concerns Reasonableness, Not Patentability* – Plaintiff asserts that Covidien is asking this Court to rule on the patentability of the proposed patent applications, and states that the "Court should reject Covidien's invitation to act as a patent examiner." *Reply at 19-20*. But Covidien is not asking the Court to rule on patentability or act as a patent examiner. Rather, in connection with Syntheon's motion for partial summary judgment, Covidien is merely asking the court to assess whether Syntheon's contention that Covidien was objectively unreasonable in not consenting to Syntheon's request to file its proposed patent applications is correct and undisputed as a matter of fact and law. Of course, in making this assessment, the Court will need to consider the question of patentability, but for purposes of the ultimate ruling on Plaintiff's pending summary judgment motion, the Court need not rule on patentability. It need only rule on the reasonableness of Covidien's decision-making.

More specifically, it need only rule, with all inferences being drawn in Covidien's favor, on Syntheon's contention that Covidien's decision was objectively unreasonable. Syntheon has not come close to meeting its substantial summary judgment burden.

       3.     *The Filing of the Proposed Patent Applications Would Violate the Duty of Candor to the PTO* – Plaintiff argues the unremarkable – and undisputed – point that the duty of candor cannot be violated when a party cites pertinent prior art, and advocates for patentability over the fully disclosed prior art. *Reply at 5-7*. Plaintiff's argument misses the mark. Here, the filing of the proposed applications would necessarily violate the duty of candor because the arguments and factual representations Plaintiff proposes to make run directly contrary to arguments and representations previously made by Covidien either to the PTO or in court filings or both. *See, e.g.*, Covidien's Response to Plaintiff's Rule 56 Statement of Material Facts (Docket # 72) ("Def. R. 56 St.") at ¶¶ 90-110. For instance, in arguing for patentability, Plaintiff would have to cite to and explain how the proposed patents can be distinguished from the prior art, including the so-called Weinberg, Kimura, Sakurai, Ando, Dowe, Huseman, and Podhajsky Patents and from the K12G Data Sheets. *Id*. at ¶¶ 92-101. But, in prior filings with the PTO and this Court, Covidien has expressly stated that each of these items, either individually or in combination, render the proposed applications unpatentable. *Id.* at ¶¶ 107-08. Thus, the very filing of the proposed applications, which per the parties' contracts must be filed in Covidien's name (*see, e.g., id*. at ¶¶ 49, 54), would put Covidien in the untenable position of speaking out of both sides of its mouth.

     Either the current assertions and arguments would be deemed meritless or the prior assertions and arguments on the exact same prior art would be deemed meritless. Either the PTO would accept or reject Syntheon's proposed arguments. Either way, Covidien would necessarily

be found to have lied and/or violated its duty of candor, either now or previously. Indeed, it was Covidien's concern with this very dilemma that was at the heart of its decision not to allow Syntheon to file the proposed applications. And it was that concern that renders Covidien's decision reasonable. Simply put, it cannot be unreasonable – and certainly not unreasonable as a matter of law – not to approve the filing of patent applications which one believes, in good faith, will violate the duty of candor, and inevitably lead to allegations of inequitable conduct. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2513 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *see also Bose Corp. v. Lightspeed Aviation, Inc.*, 691 F.Supp.2d 275, 281-82 (D. Mass. 2010) (finding that Defendants' allegation that material statements to the patent office were later contradicted by patent owner is sufficient to state a claim of inequitable conduct).

    4.    *Covidien's Opposition Does Not Rely on Hearsay* – Plaintiff argues that Covidien's Opposition relies on hearsay statements, which should be disregarded by the Court. *Reply at 11-13*. In making this argument, Plaintiff flunks Evidence 101. Not every out of court statement by a third-party is hearsay. Such statements are only inadmissible hearsay if they are "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Here, the purported "hearsay" consists of statements made to a Covidien attorney by a PTO representative to the effect that any effort to amend the '042 or the '358 patent, *i.e.*, any effort to pursue Plaintiff's proposed patent applications, would be rejected at least until the "defective priority date" of the two-stage switch family of patents was corrected, as well as a recommendation from the PTO representative that prosecution of the '042 and '358 patents, including any amendment of those patents, be suspended until the defective priority date has been cured. *Reply at 11*; *see also* Def. R. 56 St. at ¶¶ 117-19; Decl. of J. McPartland (Docket # 75) at ¶¶ 11-13. But none of

the allegedly offending statements are being offered for their truth.  Rather, they are being offered for the fact that the conversation with the PTO representative occurred, and that Covidien's attorney walked away from the conversation with the understanding that the statements were effectively an endorsement of Covidien's view that pursuit of Plaintiff's proposed patent applications would be, at best, premature.  *Id*.  Whether the statements made by the PTO representative are true or false is irrelevant.  What matters is Covidien's take-away from the statements, namely a belief and understanding that Covidien's earlier decision not to allow Syntheon to pursue its desired amendments to the '042 and '358 patents was the correct decision.  The statements are not inadmissible hearsay.  Rather, they are evidence of the reasonableness of Covidien's earlier decision.

Plaintiff not only misconstrues the cited PTO representative's statements as inadmissible hearsay, it also questions the credibility of the Covidien witness who reported the conversation. *See Reply at 12-13*.  But, of course, on summary judgment all questions of credibility must be decided against the moving party.  *Woodman v. Haemonetics Corp*., 51 F.3d 1087, 1091 (1st Cir. 1995) ("No credibility assessment may be resolved in favor of the party seeking summary judgment.") (citation omitted); *Liberty Lobby*, 106 S. Ct. at 2513.  If anything, the fact that Syntheon is calling into question the credibility of a Covidien witness, highlights just why the issue raised by Syntheon is inappropriate for summary judgment.

Syntheon further asserts that Covidien "evidently will seek to rely" on the alleged "inadmissible hearsay" to convince this Court to "defer action on Syntheon's Motion."  *Reply at 12*.  Nothing could be further from the truth.  Covidien does not cite the out-of-court statements made by the PTO representative to argue for delayed action.  It cites the statements as evidence for why Syntheon's Motion must be denied, and denied now.

5.      *The Law Does Not Immunize Covidien's Previously Issued Patents from Infection Resulting from Syntheon's Inequitable Conduct* – Plaintiff argues that even if it were to violate its duty of candor and engage in inequitable conduct, the patents in the two-stage switch family that have already issued to Covidien could not, as a matter of law, be put at risk. *See Reply at 14-17*. Per Plaintiff, what the courts sometimes refer to as the "doctrine of infectious inequitable conduct," (*see, e.g.*, *Bone Care Intern., LLC v. Pentech Pharmaceuticals, Inc.*, 96 U.S.P.Q.2d 1895, 2010 WL 1655455, *2 (discussing the "doctrine of infectious inequitable conduct or infectious unenforceability"), is only forward looking, *i.e.*, violations of the duty of candor cannot legally infect or taint or otherwise put at risk any already-issued patent. *See Reply at 14-17*. In Plaintiff's view, inequitable conduct can put children-patents at risk, but not parent-patents. *Id*. But Plaintiff's position is at best partial and misleading, and the case-law it cites is ultimately immaterial to the issue before the court on Plaintiff's motion for partial summary judgment, namely the issue of the reasonableness of Covidien's conduct.

First, to the degree Plaintiff suggests that inequitable conduct can only, as a matter of law, affect "children" patents, its position is not supported by the case law. *See, e.g., Consolidated Aluminum Corp. v. Foseco Intern. Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990) (inequitable conduct on one patent can affect patents in a wholly separate family, *i.e.*, it can affect patents that are not "children" of the inequitably obtained parent).

Second, Plaintiff's proposed patent applications seek patents that would be the progeny of seven earlier issued patents in the family, and two other earlier filed, but not yet issued patents. Def. R. 56 St. at ¶ 108; Decl. of M. Satchwell (Docket # 73) at ¶ 2. Four of the seven earlier issued patents are currently under re-examination before the PTO, and have not, as yet, re-issued. Thus, six of the nine family members, all of which would technically be "parents" of

Plaintiff's proposed patents, could issue (in four instances, "reissue") *after* the proposed patents, and be infected by Plaintiff's inequitable conduct regarding the proposed applications. As the Federal Circuit has made clear in the lead case cited by Plaintiff, *Fox Industries, Inc. v. Structural Preservation Systems, Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990), any breach of the duty of candor in one patent application "may render enforceable all claims which eventually issue from the same or a related application." There can be no question that the six family members whose issuance is pending are all "related applications."

Third, there is little doubt that the inconsistency, indeed the direct conflict, between representations regarding the relevant prior art that Covidien has previously made and the representations and arguments that Plaintiff proposes to make in connection with the proposed applications, would create risk for Covidien's earlier issued patents in foreseeable third-party litigation, if not with the PTO as well. *See, e.g.*, *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2012 WL 1534065, at *3-7 (N.D. Cal. May 1, 2012) (limiting the scope of claims based on inconsistent positions taken in other proceedings).

Fourth, even if the earlier issued (or filed) patents in the pertinent family were not directly put at risk, the direct conflict between statements Covidien has made about Plaintiff's proposed patents, both before the PTO and in pleadings in this Court, and the statements Plaintiff proposes to make in its proposed applications, would inevitably call Covidien's credibility into question, which would risk permanent harm to Covidien. *See, e.g.*, *Massachusetts Inst. of Tech. v. Harman Int'l Indus. Inc.*, 530 F. Supp. 2d 369, 380 (D. Mass. 2007) (recognizing an interest in not "putting [a corporate entity's] reputation on the line by intentionally lying to the PTO"). Indeed, the harm to Covidien's credibility would occur regardless of whether the PTO rejected or approved Syntheon's proposed applications. If the proposed patents were rejected, the PTO

would surely question how and why Covidien, which has stated numerous times that the proposed patents are unpatentable, could have permitted the filing of applications for patents it knew were illegitimate. Likewise, if the proposed patents were somehow approved, the fact that Covidien has asserted the view that any approval would be inappropriate, would result in questions being raised regarding Covidien's credibility. Surely, it was not unreasonable for Covidien not to permit Syntheon to file patent applications for patents that Covidien has asserted are unpatentable, and which applications Covidien believed (and continues to believe) would taint its reputation.

   6.  *Syntheon's Inequitable Conduct Would Be Readily Proven* – Plaintiff maintains that "[t]o prevail on the defense [sic!] of inequitable conduct, there must be 'clear and convincing proof' that the patent applicant misrepresented or omitted material information with the specific intent to deceive the Patent Office." *Reply at 18*. Plaintiff goes on to assert that "[t]here is no evidence in the record that Covidien could possibly meet this standard at trial." *Id*. Covidien has two responses.

   First, the position articulated by Plaintiff makes no sense. After all, Covidien would not be seeking to establish inequitable conduct at trial. Covidien's concern is that inequitable conduct would be established against it, not that it would have to establish such conduct against Syntheon. Notwithstanding the fact that it would be Syntheon, and not Covidien, filing the proposed applications, Covidien would be the primary target of any inequitable conduct challenge. After all, per the parties' contracts, the proposed applications would necessarily be filed in Covidien's name, and Covidien would be required to prosecute the applications. *See* Asset Purchase Agreement ("APA") at § 7.8(c); Development Agreement ("DA") at § 9.3(b)). (The APA and the DA are both part of the summary judgment record. *See* Def. R. 56 St. at ¶¶

46-55; Decl. of S. Perkins (Docket # 74) at ¶ 4; Affidavit of Sean McBrayer, attachment 1 to Plaintiff's reply memorandum in support of its motion for a preliminary injunction (Docket # 45) ("McBrayer Aff."), Ex. A.)  Both the APA and DA provide for Syntheon to *file* patent applications when permitted to do so by Covidien, but neither permits Syntheon to prosecute the applications.  *See* Def. R. 56 St. at ¶¶ 49-50; McBrayer Aff., Ex. B at § 9.3(a).  Furthermore, both agreements explicitly state that any and all patent applications filed by Syntheon "shall be assigned to, and exclusively owned by, Covidien."  *Id.*

Second, any inequitable conduct charge lodged against Covidien would be readily proven in light of the fact that the proposed applications would include representations that are directly in conflict with prior representations made by Covidien, and because the filing of the proposed applications would fly in the face of Covidien's understanding that it was told by the PTO to stand down in pursuing any further patent claims in the family of patents at issue until such time as the defective priority claim issue is resolved.  Def. R. 56 St. at ¶¶ 101, 108, 119; Decl. of J. McPartland at ¶ 13.  Indeed, the reasonableness of Covidien's decision not to permit Syntheon to file the proposed applications is grounded, at least in part, on Covidien's concern that any such filing would set Covidien up for a charge of inequitable conduct.  Def. R. 56 St. at ¶¶ 101, 119-20; Decl. of J. McPartland at ¶¶ 11-13; Decl. of M. Satchwell at ¶ 11, Ex. 10.

7. *Covidien Would Be Harmed Even If the Patent Office Allowed the Proposed Applications* – Plaintiff asserts that the mere suggestion that Covidien could be harmed by an allowance by the PTO of the proposed applications is "incredibl[e]."  *Reply at 18.*  But much as Plaintiff may feign disbelief, the harm to Covidien that would result from an allowance would be real and tangible.  Under the parties' agreements, Covidien, and Covidien alone, must pay the maintenance fees for any issued patent.  *See, e.g.*, McBrayer Aff., Ex. B at § 9.3(c), Ex. A at

9

§ 7.8(d).  Furthermore, Covidien is required under the agreements to defend all issued patents. Per the agreements, it "shall not abandon, cancel or otherwise compromise any Issued Patent." *Id*.  Thus, allowance would put Covidien in the position of having to pay the costs of maintaining and defending patents it believes are unpatentable.  That the PTO may mistakenly issue one or more of the proposed patent claims, would not make Covidien's harm any less real.  After all, the PTO makes mistakes all the time as illustrated by the fact that 88% of issued patents that receive final written decisions in Inter Partes Review proceedings have at least one claim found to be invalid.  Law360, *PTAB Kill Rates: How IPRs Are Affecting Patents*, www.law360.com/articles/699860 (last visited Apr. 13, 2017).  Here, if the proposed patents were to issue, and then be challenged, as they likely would be, Covidien would be placed in the untenable position of having to pay the substantial costs of defending the patentability of the issued patents, which it believes are not patentable.  And it would have to defend those patents in a proceeding in which the party challenging the patents' validity would be armed with Covidien's own written documents in which Covidien has told the PTO and this court its bases for believing the patents are unpatentable.  Def. R. 56 St. at ¶¶ 107-110; Decl. of M. Satchwell at ¶¶ 2-3.  It cannot be unreasonable for a party to avoid putting itself in this sort of untenable and unwinnable situation.

       8.     <u>*Covidien Need Not Prove Harm*</u> – Plaintiff maintains that if Covidien is unable to prove that it would suffer harm, "Syntheon has a right to file a patent application for its own benefit, whether or not Covidien would realize a benefit." *Reply at 19*.  This is simply not the case.  Although here Covidien is able to show that it would suffer genuine and lasting harm if the proposed patent applications were filed, it need not show actual harm for its decision not to permit Syntheon to file the applications to be deemed reasonable.  *See, e.g., Anderson v.*

*Cryovac*, 805 F.2d 1, 7 (1st Cir. 1986) ("A finding of good cause must be based on a particular factual demonstration of *potential* harm") (emphasis added); *Blackstone Subaru, Inc. v. Subaru of New England, Inc*., No. 9101545, 1993 WL 818780, at *7 (Mass. Super. Oct. 22, 1993) (focusing on a party's reasonableness and good faith to evaluate whether there was good cause to withhold consent to modify a commercial agreement). The mere risk of harm, the good faith belief in the possibility of harm, the reasoned assessment that the proposed patents are unpatentable, and Covidien's belief that it would obtain no benefit whatsoever from patents that it would own and which it would be required to maintain and defend, are all, individually and in the aggregate, reasonable bases for Covidien's decision not to consent to the filing of the proposed applications. Syntheon's assertion that these reasons are not good enough, as a matter of law, and that it is entitled to summary judgment on the issue of Covidien's alleged unreasonableness, finds no support in the law. Indeed, it is not surprising that Syntheon cites no authority to support its contention. There is none (at least none that we have found).

9. *Syntheon Has No Contractual Right to Prosecute the Proposed Patent Applications* – Plaintiff seeks to enjoin Covidien "from interfering unreasonably in the filing and prosecution of the two Patent Applications." *Reply at 21*. Notably, even if the facts here supported (which they do not) a finding that Covidien had unreasonably withheld consent for Plaintiff *to file* its proposed applications, there would be no basis to permit Syntheon *to prosecute* the applications. Under the parties' agreements, Covidien may not unreasonably withhold its consent *to file* patent applications it itself has determined not to file. But it may withhold consent *to prosecute* for any reason or no reason at all. In fact, the prosecution right is preserved for Covidien, and only Covidien, under the parties' Agreements. *See* APA at § 7(d) and DA at § 9.3(c). It is no wonder that in its summary judgment papers Syntheon glosses over

the distinction between the limited filing right that the agreements offer Syntheon and the non-existent prosecution right.  After all, the fact that Covidien would have to prosecute applications for patents it believes are unpatentable only highlights the reasonableness of Covidien's decision to decline Syntheon's filing request.

WHEREFORE, for the reasons stated above and in Covidien's Opposition, Syntheon's motion for partial summary judgment on the issue of Covidien's supposed objective unreasonableness in deciding not to allow the filing of Plaintiff's proposed patent applications, must be denied.

Date:  April 19, 2017

Respectfully Submitted,

COVIDIEN AG,

By its attorneys,

/s/ David J. Apfel
David J. Apfel (BBO No. 551139)
dapfel@goodwinlaw.com
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
Tel: 617.570.1970
Fax: 617.523.1231

Drew M. Wintringham, III
drew.wintringham@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

Matthew D. Satchwell
Illinois Bar No. 6290672
matthew.satchwell@dlapiper.com
Ferlillia V. Roberson
Illinois Bar No. 6296432
ferlillia.roberson@dlapiper.com
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
Tel: 312.368.4000
Fax: 312.236.7516

CERTIFICATE OF SERVICE

    I, David J. Apfel, hereby certify that I have this day, April 18, 2017, electronically served the above Defendant Covidien AG's Sur-Reply In Support of Opposition to Plaintiff's Motion for Partial Summary Judgment through the ECF system on all counsel of record identified on the Notice of Electronic Filing (NEF).   A paper copy of the Defendant's Sur-Reply shall be served by mail on all counsel of record not identified on the NEF.

                                             */s/ David J. Apfel*
                                             David J. Apfel (BBO #551153)