UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SYNTHEON, LLC, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 16-cv-10244-ADB |
| COVIDIEN AG, | * |
| Defendant. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

This case involves a contractual dispute between Syntheon, LLC ("Syntheon") and Covidien AG ("Covidien") related to certain medical technology and related patents. Presently pending before this Court are Syntheon's motions for partial summary judgment [ECF No. 62] and to strike inadmissible hearsay statements [ECF No. 91]. For the reasons explained below, both motions are <u>DENIED</u>.

### I. PROCEDURAL BACKGROUND

On February 12, 2016, Syntheon filed a complaint against Covidien [ECF No. 1], which it amended on April 20, 2016 [ECF No. 14] and again on December 1, 2016 [ECF No. 52]. The Second Amended Complaint ("SAC") contains the following counts: breach of contract (Count I); breach of good faith and fair dealing (Count II); violation of Mass. Gen. Laws ch. 93A (Count III); specific performance (Count IV); a request for injunctive relief (Count V); and a request for declaratory relief (Count VI). Covidien answered the SAC on December 15, 2016. [ECF No. 55].

1

On January 30, 2017, Syntheon moved for partial summary judgment on the breach of contract claim with respect to whether Covidien breached their contract by withholding consent for Syntheon to file its proposed patent applications. [ECF No. 62]. Covidien opposed the motion. [ECF No. 71]. Both parties have also filed statements of material fact and responses pursuant to Local Rule 56.1 [ECF Nos. 64, 72, 85], as well as affidavits with attached exhibits [ECF Nos. 65, 66, 73, 74, 75]. Further, Syntheon filed a reply [ECF No. 84] and Covidien filed a sur-reply [ECF No. 88]. Finally, Syntheon filed a motion to strike inadmissible hearsay contained in Covidien's opposition to the partial summary judgment motion [ECF No. 91], which Covidien opposed [ECF No. 93].

## II. FACTUAL BACKGROUND

Pursuant to Local Rule 56.1, material facts contained in the statements of material fact are deemed admitted for purposes of this summary judgment motion unless controverted by the opposing party's statement. Additional relevant facts will be discussed as needed in this Memorandum and are presented in the light most favorable to Covidien, the non-moving party.[1]

Defendant Covidien is a Swiss corporation and a subsidiary of Medtronic Public Limited Company. Plaintiff Syntheon, a Florida limited liability company, describes itself as engaged in the business of designing and developing new medical devices. P.Facts ¶ 1. In 2007 and 2008, Syntheon developed a cordless ultrasonic scalpel. During that time, it filed more than a dozen patent applications with the U.S. Patent Office ("PTO") in connection with various features of the scalpel, including its handle, transducer, and assembly.

---

[1] The Court uses "P.Facts ¶ __" to cite facts based on Syntheon's statement of facts and response to Covidien's statement [ECF Nos. 64, 85], and "D.Facts ¶ __" to cite facts based on Covidien's response and counterstatement of the facts [ECF Nos. 72].

In December 2008, the parties entered into an Asset Purchase Agreement ("APA") [ECF No. 65-2], and a Development Agreement ("DA") [ECF No. 65-3]. As part of the APA, Syntheon sold certain intellectual property relating to the cordless surgical cutting devices, including patent applications that were pending at the time, to Covidien. The APA provides for royalty payments to Syntheon in connection with the intellectual property. As part of the DA, Freedom Surgical LLC, a wholly-owned subsidiary of Syntheon, is required to "develop exclusively for Covidien one or more products based on the Subject Technology." The "Subject Technology" is "all or substantially all of the assets and properties related to cordless surgical products licensed to, invented, or designed by Freedom or one or more of its affiliates based on or utilizing certain 'smart' battery, articulation, and/or ultrasonic and/or radiofrequency technologies and associated intellectual property," which were purchased or licensed pursuant to the APA. The parties, however, dispute which agreement, the APA or the DA, governs the proposed patent applications at issue in the pending motion. D.Facts ¶ 6. Syntheon claims that the APA governs the issues in this motion, while Covidien claims that the DA applies.

Under the APA, "[f]or the duration of the Royalty Term, Covidien AG shall pay to the Seller [Syntheon] in the manner provided herein a running royalty of 4% on Net Sales of each Covered Product sold." APA § 2.6(b)(i). The APA defines a "covered product" as any product within the scope of "any Patent included in, or that otherwise issues from, the Transferred Intellectual Property." APA § 1.1. "Transferred Intellectual Property" is defined in the APA at 2.1(a)(i) and is listed in Schedule 2.1(a)(i). It includes, among other things, patent applications related to the ultrasonic cordless scalpel that were pending at the time the agreements were executed.

With respect to "Patent Filing and Prosecution," the APA provides:

> After the Closing Date, Covidien AG shall be solely responsible for the continued prosecution and maintenance of any Patent Application included in the Transferred Intellectual Property. Covidien AG also shall be solely responsible for the preparation, filing and maintenance of any new Patent Application filed after the Closing Date with respect to any Transferred Intellectual Property. [Syntheon] shall promptly disclose to Covidien AG all inventions related to the Transferred Intellectual Property and [Syntheon] shall cooperate with and assist Covidien AG in seeking protection and protecting the same in the name of Covidien AG or its designee, including without limitation executing any documents that Covidien AG may reasonably request and obtaining the cooperation of current and former employees and consultants of [Syntheon] to sign such documents.

APA. § 7.8(a). It further provides:

> If Covidien AG determines not to file any particular Patent Application in the Specified Countries, or determines not to file any new Patent Application regarding an invention contained in the Transferred Intellectual Property as disclosed by [Syntheon], Covidien AG shall timely notify [Syntheon] of such determination, and following such notification [Syntheon] may, upon Covidien AG's prior written approval (which, after review of any such Patent Application, shall not be unreasonably withheld), in good faith prepare and file any such application at [Syntheon]'s sole and exclusive cost and expense and shall provide Covidien AG with copies of all documents filed by [Syntheon] with respect to such application. All Patent Applications filed by [Syntheon] as set forth above shall be assigned to, and exclusively owned by, Covidien AG.

APA § 7.8(c). Of particular importance to the instant motion is the clause under which Covidien cannot "unreasonably with[o]ld" its consent to allow Syntheon to file a patent application that Covidien chose not to file (hereinafter, the "Reasonable Consent Clause"). The parties agree that APA § 7.8(c) and DA § 9.3(b) contain substantially similar language, and Covidien does not argue that the outcome of the instant motion turns on which agreement governs.[2]

Under the APA, Covidien and Syntheon

> shall use all reasonable efforts to take, or cause to be taken, all appropriate action, do or cause to be done all things necessary, proper or advisable under applicable Law, and to execute and deliver such documents and other papers, as may be required to carry out the provisions of this Agreement and the Ancillary Agreements to which it is a party and consummate and make effective the transactions contemplated hereby and thereby.

---

[2] As a result, the Court does not make a finding at this stage as to which agreement governs the parties' disagreement.

APA § 7.7. Both the APA and the DA provide that Covidien "shall not abandon, cancel or otherwise compromise" any issued patent as specified under the agreements. APA § 7.8(d)(i); DA § 9.3(c)(i). Furthermore, Covidien is obligated to prosecute patent applications it personally files "diligently" and "in good faith," among other things, and to "use the same degree of care that Covidien . . . uses in the normal course of filing, registering and prosecuting its own Intellectual Property, but in no event, less than commercially reasonable efforts." APA § 7.8(d); DA § 9.3(c).

Since December 2008, Covidien has filed and prosecuted several patent applications for various aspects of the two-stage switch technology.[3] Covidien states that the first of the family was the '934 Application filed on August 26, 2009. D.Facts ¶ 59. Ultimately, seven patents issued from Covidien's filings related to the two-stage switch technology. D.Facts ¶¶ 56, 60–62. Covidien also filed the '042 Application and '358 Application in March 2014 and January 2015, respectively, which have not yet resulted in fully issued patents and are particularly relevant to the instant dispute. In early 2015, Covidien transferred work on the '042 and '358 Applications from Syntheon's patent prosecution counsel to its patent prosecution counsel (Carter, DeLuca, Farrell & Schmidt, LLP). D.Facts ¶ 65.[4]

---

[3] Syntheon describes the two-stage switch technology as follows: "[u]nlike an ordinary switch, the two-stage switch permitted the user to easily perceive, via a tactile feedback, two distinct levels or stages as the switch was being depressed. A surgeon using a medical device with a two-stage switch could consciously and intuitively operate the device between two conditions corresponding to the two stages of the switch." [ECF No. 63 at 5]. Covidien describes it as a process by which "minimum and maximum power modes are accessible depending on how far the surgeon depresses a single button." D.Facts ¶ 58.

[4] The facts in this paragraph are largely based on Covidien's statement and counterstatement of the facts. [ECF No. 72]. Syntheon only generally stated that the additional facts provided by Covidien are not material and that "some of [the facts] are undisputed and some of [the facts] are disputed," but did not specify which of these facts it actually disputes. [ECF No. 85]. Syntheon specifically admitted the facts contained in Paragraphs 73–75, 79, 86, 90–91, 107 and 108 for

In April 2015, Syntheon informed Covidien that Syntheon believed that the two-stage switch technology had been incorporated into a Covidien product known as the LigaSure™ Small Jaw Open Instrument and was therefore covered by claims in one of the issued patents. P.Facts ¶ 18; D.Facts ¶ 18. In May 2015, the PTO issued notices with respect to the '042 and '358 Applications. Specifically, it issued (1) a Notice of Allowance for the '358 Application[5] and (2) an Office Action regarding the '042 Application that rejected the pending claims because they were not patentably distinct from another patent (the '269 Patent).[6] P.Facts ¶ 27; D.Facts ¶¶ 26, 27. Following these notices, on July 20, 2015, Covidien filed an Information Disclosure Statement ("IDS") disclosing additional prior art that it deemed relevant to the '042 Application, which it had discovered, following the change in prosecution counsel, was not previously disclosed. P.Facts ¶ 29; D.Facts ¶¶ 29, 30, 67–68. On July 22, 2015, without informing Syntheon, Covidien's in-house counsel met with the patent examiner. P.Facts ¶ 31; D.Facts ¶¶ 31, 70. According to Covidien, the purpose of the meeting was to "discuss the prior art, explain the omitted disclosures, and explore the patentability of the pending claims." D.Facts ¶ 70.[7]

According to Covidien, after the meeting, the patent examiner suggested modifications to the claims in the '042 Application in light of the prior art, which Covidien then suggested to

---

purposes of summary judgment. Outside of those paragraphs, therefore, the Court will assume that Syntheon disputes the facts in Covidien's counterstatement in their entirety.
[5] "If, on examination, it appears that the applicant is entitled to a patent under the law, a notice of allowance will be sent to the applicant . . . ." 37 C.F.R. § 1.311.
[6] According to Syntheon, this sort of issue is known as "double patenting" and is "typically resolved by having the patent holder file a terminal disclaimer, which causes the second patent to expire on the same date as the first." [ECF No. 63 at n.4].
[7] Covidien's patent prosecution counsel also discovered undisclosed, relevant prior art in the '358 Application. D.Facts ¶ 68. On August 24, 2015, Covidien filed a Request for Continued Examination in the '358 Application given the undisclosed prior art. D.Facts ¶ 71.

Syntheon in August 2015. P.Facts ¶¶ 32–33; D.Facts ¶ 33. Covidien eventually also suggested modifications to the '358 Application. P.Facts ¶ 33. According to Syntheon, the modifications would have restricted the patents in such as a way as to weaken any assertion that the resulting patent would cover Covidien's LigaSure Instrument. P.Facts ¶¶ 33–34. Covidien responds that the modifications were part of an effort to overcome the patent examiner's concerns and the risk of invalidation post-issuance, and thereby implying that the modifications were not intended to impact the royalties to which Syntheon would be entitled. D.Facts ¶ 33.

Syntheon rejected the suggested modifications and proposed a broader alternative. P.Facts ¶ 37; D.Facts ¶ 37. The parties disagreed about whether Syntheon's suggested modifications would overcome the issues presented by the newly disclosed prior art. On January 26, 2016, Syntheon asked Covidien to allow Syntheon to file one of the proposed patent applications with the broader claims. See McBrayer Aff., Ex. F, [ECF No. 65-7]. On January 28, 2016, Syntheon sent Covidien a second patent application related to the '358 Application, and requested that Covidien file it or allow Syntheon to file that one as well. See McBrayer Aff., Ex. G, [ECF No. 65-8]. In a series of letters, Covidien informed Syntheon that it did not consent to Syntheon filing the two proposed patent applications. Covidien explained that it based its refusal, at least in part, on the fact that the proposed claims would require the filing party to advocate for the validity of the proposed claims over known prior art, which would result in Covidien having to take positions during prosecution that contradicted other statements it had already made to the PTO regarding the patentability of the claims. D.Facts ¶ 91. Covidien also informed Syntheon that it withheld consent because it did not believe that the proposed claims were patentable and that, even if they were, they would add little if any value to the already existing patent family. P.Facts ¶ 43; D.Facts ¶ 43. Both the '358 and '042 Applications, which included Covidien's

7

modifications and not Syntheon's proposals, were eventually allowed, D.Facts ¶¶ 85, 88, although it does not seem that either patent has actually issued.

On a separate but eventually related issue, on November 19, 2015, the PTO notified Covidien that the priority claim for the '042 Application was defective.[8] Following that notification, Carter DeLuca, Covidien's patent prosecution counsel, analyzed and investigated the priority claims associated with the entire two-stage switch technology patent family. He discovered that much of the family suffered from defective priority claims. Specifically, the '269 Patent and any subsequent child application (including the '042 and '358 Applications) were barred from claiming priority any earlier than their immediate parent application. Covidien filed petitions with the PTO in an effort to correct the faulty priority claims for the issued patents and pending applications. In June 2016, Covidien filed reissue applications in connection with the '199, '269, '436, and '437 Patents to correct the defective priority claims for those patents by filing petitions seeking to properly claim priority back to the '934 Application. At that time, Covidien also filed Petitions to Accept an Unintentionally Delayed Domestic Benefit Claim Under 35 U.S.C. §§ 119 and 120 in the '042 and '358 Applications in an effort to properly claim priority back to the '934 Application. In December 2016 and February 2017, the PTO denied Covidien's petitions to correct the priority claims of the '042 and '358 Applications. McPartland Decl. ¶¶ 8, 9, [ECF No. 75]; D.Facts ¶ 80. In March 2017, according to Covidien, the PTO and Carter Deluca spoke over the phone about the denials and possible ways to correct the defective priority claims. D.Facts ¶ 80. Covidien claims that the PTO further informed it that the '042 and

---

[8] Prior art is invalidating when "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1). Under certain conditions, a later-filed patent application may claim the benefit of a prior application's earlier filing date. 35 U.S.C. § 119(e); 35 U.S.C. § 120; 37 C.F.R. 1.78.

'358 Applications would not issue until "(1) the priority claims in the intervening patents are corrected through the reissue process and (2) the corrected intervening patents are reissued," and that, in the meantime, it should request suspension of all already-allowed applications, including the '042 and '358 Applications. D.Facts ¶¶ 118, 119.[9]

### III. LEGAL STANDARD

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Once the movant takes the position that the record fails to make out any trialworthy question of material fact, "it is the burden of the nonmoving party to proffer facts

---

[9] The Court does not consider these statements for their truth, but only to understand Covidien's subsequent actions.

sufficient to rebut the movant's assertions." Nansamba v. North Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013) (citation omitted).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In reviewing the record, however, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Medina-Munoz, 896 F.2d at 8 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)). At summary judgment, however, "the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Burns v. Johnson, 829 F.3d 1, 8 (1st Cir. 2016) (alteration in original) (quoting Anderson, 477 U.S. at 249).

## IV. DISCUSSION[10]

Syntheon argues that it has a contractual right under the APA to file its proposed patent applications, see McBrayer Aff., Exs. F, G, [ECF No. 65-7, 65-8], because Covidien's withholding of consent is not reasonable. The parties agree that the APA and the DA are governed by Massachusetts law, see APA, § 9.9(a); DA § 15.1, and that the crucial determination under either agreement is whether Covidien's refusal to consent to Syntheon's filing of the two patent applications was "unreasonable."

The APA and the DA both provide that if Covidien refuses to file a patent application, Syntheon may file it with written approval from Covidien, which approval cannot be "unreasonably withheld." APA § 7.8(c); DA § 9.3(b). Covidien argues primarily that there are material factual disputes that preclude summary judgment, particularly regarding the risk of future litigation exposure and the possibility that the value of the intellectual property secured by Covidien under the agreements will be impacted by the filing of legally improper or deficient patent applications. Syntheon claims that Covidien's justifications for withholding its consent regarding the instant proposed patent applications are factually undisputed and the decision was unreasonable.

"Under Massachusetts law, the 'interpretation of a contract is ordinarily a question of law for the court.'" Fairfield 274–278 Clarendon Trust v. Dwek, 970 F.2d 990, 993 (1st Cir. 1992)

---

[10] As a preliminary matter, Syntheon's motion to strike [ECF No. 91] is DENIED. Syntheon moved to strike certain statements allegedly made by the PTO to Covidien's counsel, arguing that they are hearsay. At this stage, the Court will only consider the statements as they relate to the reasonableness of Covidien's refusal to allow Syntheon to file its patent applications, and not for the truth of the matter asserted therein. Moreover, on summary judgment, the Court cannot make credibility determinations as to the accuracy of the purported statements in favor of Syntheon. See Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995) ("No credibility assessment may be resolved in favor of the party seeking summary judgment.").

(quoting Edmonds v. United States, 642 F.2d 877, 881 (1st Cir. 1981)). With respect to the Reasonable Consent Clause, the parties seem to agree that the Court applies the "usual standard of reasonableness" to Covidien's decision to withhold consent. See Nassif v. Bos. & Me. R. R., 165 N.E.2d 397, 402 (Mass. 1960) (applying "usual standards of reasonableness" to substantially similar clause). "The duty to act 'reasonably,' like a duty to employ 'best efforts,' or to act in 'good faith,' is not reducible to 'a fixed formula [, and] varies with the facts and the field of law involved.'" Rey v. Lafferty, 990 F.2d 1379, 1393 (1st Cir. 1993) (quoting Triple-A Baseball Club Assoc. v. Northeastern Baseball, Inc., 832 F.2d 214, 225 (1st Cir. 1987)). "It falls to [the Court] to define [the] 'usual standards of reasonableness,' in the present context, in a way which accords with the contracting parties' intent, yet avoids rendering the 'reasonableness' standard either purely illusory or duplicative of more particular contractual terms." Rey, 990 F.2d at 1393. Importantly, a rationale for withholding approval that frustrates the "*fundamental contractual assumptions* on which the [contract] was formed" is not reasonable. Id.

A determination of reasonableness is generally fact-intensive. Genesis Strategies, Inc. v. Pitney Bowes, Inc., 50 F. Supp. 3d 59, 69 (D. Mass. 2014), modified on reconsideration in part, No. 11-12270-TSH, 2014 WL 4292830 (D. Mass. Aug. 27, 2014) ("The issue of the reasonableness of the plaintiff's reliance is generally an issue of fact, but a court may grant summary judgment if it determines that no reasonable jury could find the party's reliance reasonable under the circumstances."); see also Rodi v. S. New England Sch. of Law, 532 F.3d 11, 15 (1st Cir. 2008) (discussing reasonableness determination in context of fraudulent misrepresentation).

There are abundant factual disputes throughout the record that make the determination of reasonableness inappropriate for summary judgment in this case. Mainly, the parties dispute the

impact that the filing of the proposed patent applications may have on Covidien and its intellectual property as secured by the parties' agreements. Covidien, contractually obligated to "not abandon, cancel or otherwise compromise any Issued Patent," APA § 7.8(d); DA § 9.3(c), anticipates that the successful pursuit of the proposed patent applications would require inequitable conduct or fraud, which would expose Covidien, as the holder of these future patents, to lawsuits, including antitrust liability, and also threaten the validity of the other patents in the two-stage switch technology patent family, particularly where four of the issued patents are currently under re-examination by the PTO. Syntheon disputes these possibilities, arguing that inequitable conduct would not be required, but that even assuming the proposed claims are not patentable or that there would be some inequitable conduct, the erroneous issuance of the patents would not threaten the earlier issued patents. Although determining the reasonableness of Covidien's decision to withhold consent involves some legal analysis, it also requires factual determinations concerning the relationship among the patents in the two-stage switch technology patent family and the potential impact of any error in the priority date claim.

The parties also dispute whether filing the patent applications will affect Covidien's reputation before the PTO or be a violation of Covidien's duty of candor. According to Covidien, the proposed patent applications would contradict past representations Covidien made before the PTO and filing them would run contrary to advice allegedly received from the PTO about waiting to pursue other patent claims related to the two-stage switch technology until after any defective priority claim error is resolved. Syntheon argues that representations by counsel about the patentability of a claim over prior art do not, on their own, violate the duty of candor. It is not clear at this stage, however, that the conduct that potentially would give rise to a breach of duty of candor is necessarily limited to representations by counsel that do not, as a matter of law,

amount to misrepresentations of material fact. Furthermore, Syntheon seems to dispute the PTO's alleged statements to Covidien or that such statements could justify the withholding of consent. Finally, Covidien weighed the possible risk of harm it anticipates against the determination that obtaining the proposed patents would secure little to no benefits for its holders, which Syntheon, of course, disagrees with.[11] At bottom, the parties fundamentally disagree about whether the proposed patent applications would undermine or expand the value of the Covidien's intellectual property as secured by the agreements and to what extent they would impact the benefits to each party under those agreements. Such determinations underlie the reasonableness of Covidien's refusal and are rife with factual disputes that preclude summary judgment.[12]

V. CONCLUSION

Accordingly, Syntheon's motion for partial summary judgment [ECF No. 62] and motion to strike [ECF No. 91] are DENIED.

**SO ORDERED.**

Dated: June 28, 2017

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
UNITED STATES DISTRICT JUDGE

---

[11] Syntheon argues that the new patents would allow it to collect royalties for the two-stage switch technology as used in the LigaSure Instrument from Covidien, but Covidien argues that the LigaSure Instrument does not use the two-stage switch technology and that the instrument is in fact prior art material to the proposed patents applications.

[12] The Court will not decide the patentability of a set of claims. Nonetheless, Covidien's assessment of the patentability and the reasonableness of that assessment is relevant to the reasonableness of its refusal. Patent claims are sometimes found invalid after issuance. At bottom, the question here is one of contract, not patent. Covidien may ultimately be wrong about the potential effect on its intellectual property or the patentability of the proposed claims, but it does not make its refusal to consent to the filing of the patent applications necessarily unreasonable under the parties' contracts.